CASE 94—PROCEEDINGS BY THE CITY OF BOWLING GREEN
        AGAINST W. H. McMULLEN FOR A VIOLATION OF
        THE LOCAL OPTION LAW.—Nov. 11, 1909.

## City Bowling Green v. McMullen

Appeal from Warren Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Defendant dismissed and the city appeals.—Affirmed.

Intoxicating Liquors—Local Option—Sale of Nonintoxicants—
    "Spirituous, Vinous or Malt Liquors."—Ky. St. 1909, Secs.
    2557, making it unlawful, after a local option election re-
    sulting in a vote against sale of "spirituous, vinous or malt
    liquors," to sell any such liquors, is not, in view of prior judi-
    cial construction of the words in prior statutes on the sub-
    ject, violated by sale of malt liquor containing less than 2
    per cent. of alcohol, and nonintoxicating in the largest quan-
    tity in which it may be drunk.

H. H. DENHARDT, W. B. GAINES for appellant.

### POINTS.

1. The act is in conformity with the State Constitution.—Con-
stitution, Sec. 61; Commonwealth v. Waller, 14 Bush, 219; An-
derson v. Commonwealth, 13 Bush, 488; Commonwealth v. Minor,
28 S. W. 786.

2. Sufficient to prove that the liquor sold was "malt" liquor,
without showing its intoxicating qualities. Locke v. Common-
wealth, 74 S. W. 654; Pedigo v. Commonwealth, 70 S. W. 658;
Commonwealth v. Hurst, 63 S. W. 1024.

3. Court should enforce the law as passed by the Legislature.
Commonwealth v. Fowler, supra; Mugler v. Kansas, 123 W. S.

4. "Malt Liquor," as used in the Constitution and Statutes, em-
braces all malt liquors, whether intoxicating or not. Encyclo-
pedia of Law and Procedure, Vol. 23, pp. 60 and 173; State v.
Frederickson (Me.) 6 L. R. A. (new) 186; State v. O'Connell, 99
Me. 61; Feibleman v. State, 130 Ala. 122; Iowa v. Intoxicating

City Bowling Green v. McMullen.

Liquors, L. R. A. 408; State v. Yager, 72 Iowa 421; State ex. el. Guilbert v. Kaufman (Ohio) 76 U. S. 1062; State v. Eaves, 113 Ga. 749; Merkle v. State, 37 Ala. 139; State v. Gill, 69 Minn. 502; State v. Jenkins, 64 N. H. 375.

SIMS, DuBOSE & RODES for appellees.

WRIGHT & McELROY and JOHN B. GRIDER of Counsel.

### POINTS AND AUTHORITIES.

1st. To construe Section 2557 of the Kentucky Statutes as requested by appellant, would render it an unconstitutional invasion of the rights of the citizen. Commonwealth v. Fowler, 96 Kentucky Reports, p. 179; Kentucky Constitution, Section 154; Kentucky Statutes, Section 1575; Roberts v. State of Georgia, 60 Southeastern Reporter, 1083; Intoxicating Liquors Case 37 American Reports, 284 (opinion of Justice Brewer.)

2nd. The spirit and meaning of this section makes it apply to intoxicating liquors. The past history of our State, and legislation for the past thirty years, as well as contemporaneous construction, shows this is the true spirit and meaning of the law. General Statutes of 1873, pages 364-365, Sections 9 and 10; Kentucky Statutes, Sections 1303-1307; Sections 4203 and 4207; Acts of the Legislature of 1904, page 160; Acts of the Legislature of 1906, pages 86, 321 and 363; Kentucky Statutes, Section 2557A; Rush v. Commonwealth, 20 Kentucky Law Reporter, page 775; Collins v. Henderson, 11 Bush, pages 86-93; Clark's Run, etc., Turnpike Company v. Commonwealth, 96 Kentucky Reports, pages 529 and 532; Barbour v. City of Louisville, 83 Kentucky Reports, page 102; Commonwealth v. Reynolds, 89 Kentucky Reports, pages 149 and 150; Roberts v. State of Georgia, 60 Southeastern Reporter, 1083.

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

The appellee, W. H. McMullen, was charged with a violation of the prohibition law. He was tried in the city court of Bowling Green, and a fine of $60 inflicted, from which he appealed to the Warren Circuit Court, where the appeal was tried upon an agreed statement of facts.

The case was submitted to the circuit judge, Hon. John M. Galloway, a jury being waived, with the result that he found the defendant had not been guilty of an offense against the prohibition law, and delivered his reason therefor in the following opinion which we adopt as the opinion of the court on this appeal:

"These five cases all involve practically the same question, and they are all submitted upon appeal by the defendants from judgments in the city court against each defendant for $60, upon conviction for selling by retail malt liquors in local option territory. This court is asked to determine whether or not defendants are guilty of violating the local option law as found in section 2557, Ky. St. (Russell's St. Sec. 3635), under the following agreed statement of facts, to-wit: 'It is agreed that defendant, McMullen, sold a bottle of next-to-beer in Bowling Green, Ky., as charged in the warrant. Next-to-beer is a malt liquid, that is to say, containing malt as an ingredient ,and used as a beverage, and is nonintoxicating, that is to say, that in the largest quantities in which it may be drunk it will not intoxicate. It is agreed that it contains less than 2 per cent. of alcohol and more than one-half of 1 per cent. Defendant has United States government license for the sale of malt liquors, and the agreement filed in the other cases is in substance the same as the one quoted.'

"It thus appears in the evidence that the liquor sold by defendants is what is termed 'malt liquor,' or a liquid containing malt, and that such liquor is a nonintoxicant, and will not intoxicate in the largest quantities in which it may be imbibed. It is insisted upon by counsel for the plaintiff that under and by virtue of section 2557, Ky. St., no spirituous, vinous

or malt liquors can be legally sold by retail in such prohibited districts, whether or not such liquor or liquid contains enough alcohol to intoxicate the drinker, and that it is not material whether the liquid is an intoxicant or will produce intoxication, if it may be called or termed a spirituous, vinous or malt liquor. While defendants contend that, in order to convict them under this law, the liquor sold must be an intoxicant, and that, as it is agreed that the drinks they sold or are charged with selling were not intoxicants, they have not violated the statute, or, in other words, that the intent and purpose of this law is to make it unlawful and penal to vend such liquids as will intoxicate, in local option precincts, and only such as will intoxicate. Counsel for both plaintiff and defendants have cited decisions of other states, based in the main upon their statutes, none of which appear to be entirely alike or similar to our law, and in this, as well as many other instances, these decisions run counter to each other; some tending to support the contention of the prosecution herein, and others looking to defendant's side or claims, so these citations are far from convincing either way.

"The first general local option law in the state was enacted in 1874 (see Gen. St. 1879, p. 946), and in it the same term is employed, to wit: 'A prohibition of the sale of spirituous, vinous or malt liquors.' The force and validity of this act (Acts 1873-74, p. 10, c. 117) was passed upon by the Kentucky Court of Appeals in Anderson v. Commonwealth, 13 Bush, 485, and in its opinion, written by Chief Justice Lindsay, the court said:

"We unanimously hold that the sale by retail of intoxicating liquors may be constitutionally regulated, and that in any locality where, in the opinion

of the Legislature or of its constitutionally organized agencies, the peace and good order of society so required, license to carry on the retail traffic may be refused altogether.' Our present Constitution (section 61) provides that the General Assembly shall by general law, provide a means of taking the sense of the people in any county, etc., as to whether or not spirituous, vinous or malt liquors shall be sold, etc. And such was the expression of the act of 1892 (Laws 1891-92-93, p. 214, c. 89); and the same words defining what may or may not be sold was written in the act of 1894 (Laws 1894, p. 125, c. 52, Sec. 4), which is found in section 2557, Ky. St. So from 1874 to 1898 there was no change in the nomenclature' of the liquors whose sale was forbidden in local option localities. Then in 1898 the law now found in section 2557a, Ky. St., was enacted. This law, it will be seen, prohibits the sale, barter, or loan of any beverage, liquid mixture, or decoction of any kind which intoxicates in local option territory. And in Rush v. Commonwealth, 47 S. W. 586, 20 Ky. Law Rep. 775, it was held that the act of 1898 (Acts 1898, p. 84, c. 30), which provides a different penalty for the violation from the one found in section 2557, Ky. St., did not, as contended for, repeal or affect the law contained in said section 2557, but was intended to reach violations not covered by section 2557. In this Rush opinion the court says, 'it is further insisted that the act of 1898, being now in force, repeals the penalty, or rather reduces it, for the sale of intoxicating liquors in local option precincts or localities,' and that such contention is erroneous, and that the intention of the Legislature in passing the act of 1898 was to declare that to be an offense that theretofore had not been, or to clear the matter of doubt. And further in the

same opinion, the court says: 'The clear meaning and intention of this act (of 1898) was to provide a penalty for the sale in prohibited districts of the various nostrums, bitters, and such like intoxicants sold, and of which it is difficult to show the ingredients, or whether it comes under the strict definition of spirituous, vinous or malt liquors.' So they held that this act was made to embrace and cover all other intoxicants not found to come within the terms, spirituous, vinous or malt liquors. And in Edmonson v. Commonwealth, 110 Ky. 510, 62 S. W. 1018, 22 Ky. Law Rep. 1902, the court, in its opinion, said that the amendment of March 15, 1898, fixing the penalty under it, applied only to beverages, liquid mixtures, or decoctions, or, in other words, substitutes for spirituous, vinous or malt liquors, and hence its enactment did not repeal or affect section 2557 or the act of 1894. In Mitchell v. Commonwealth, 106 Ky. 602, 51 S. W. 17, 21 Ky. Law Rep. 222, defendant was convicted under a charge of selling intoxicating liquors in local option territory. The proof was that he sold a phial of Jamaica ginger, and it was claimed there was a variance; but the court said not, if Jamaica was a spirituous liquor, and the jury found that it was. And the court further said: 'But the objection is urged that there was no evidence to support this finding, as both the vendor and vendee swore it was not intoxicating. Evidence of a druggist was introduced that the regulation requirement of Jamaica ginger was 96 per cent. alcohol and 4 per cent. ginger. If the jury believed this testimony, and believed that the phial contained Jamaica ginger (and it was bought and sold as such), they were authorized to conclude that it was intoxicating.' The court further said: 'Moreover, we think that, without the druggist's

evidence, it is matter of common knowledge that Jamacia ginger is an intoxicant, and a spirituous liquor, and it is hardly more necessary to introduce testimony of that fact than it would be of whisky.' The act of 1906, known as the 'Cammack Law' (Laws 1906, p. 86, c. 21), which is an amendment to section 2560, Ky. St., describes or defines the inhibited liquors by the term 'spirituous, vinous, malt or other intoxicating liquors.'

''With these aids or helps found in our judicial and legislative expressions from time to time since 1874, when the first law was put upon our statute books upon this subject-matter, we are to interpret and determine what is the meaning, scope and purpose of these words, 'spirituous, vinous and malt liquors' as found and used for so long in our statutes. Does it mean that these liquids may not be legally vended in prohibited localities, whether they contain or have in their makeup a sufficient quantity of alcohol to cause the drinker, in the largest quantity in which it may or might be imbibed, to become intoxicated? Or was it the intent, purpose and scope of this legislation, by the use of these common and general terms therein, to prohibit the sale of intoxicants, and not drinks, whatever they may contain, that will not intoxicate, such as it is agreed that the defendants sold or are charged with selling, and admit they did sell, in these prosecutions? It seems clear that in the Mitchell Case, supra, it was regarded as essential, in order to convict for a violation of the law for selling liquor in local option territory, that the liquid sold should be an intoxicant. Two defenses were made by defendant—one, that Jamaica ginger was not what is known as a 'spirituous liquor,' and the other that it was not intoxicating; and under the evidence

the jury found that it was a spirituous liquor, and that it was an intoxicant, and upon appeal the case was affirmed. And if such is the required rule as to what may be termed spirituous liquor, would not the same rule and construction apply to a sale of malt liquor, to wit, that it must be shown, upon a plea of not guilty, that the liquor was a malt liquor and that, as such, it was intoxicating? And the two cases cited in which the court construed the act of 1898, now section 2557a, Ky. St., it was certainly held that the enactment of that law did not in any wise repeal or affect section 2557, but that it was an amedment to said last-named section, intended to enlarge its scope, so as to embrace or include all other intoxicants not falling under the inhibition of section 2557, such as the court said it was difficult and often impossible to find out the ingredients contained in the liquid. As intimated in the Anderson Case, supra, there is grave question as to the power of the Legislature to enact a law prohibiting the sale of liquids that are not intoxicants, and not in their makeup detrimental to health or the peace or good weal of society, although they may contain malt or spirituous or vinous liquors. The Legislature, when framing the Cammack law, put this construction upon these words 'spirituous, vinous or malt liquors,' as found in the law, by using in reference thereto the words 'spirituous, vinous, malt, or other intoxicating liquors,' meaning plainly that the inhibition was to cover and include all intoxicating drinks. If not, why use the words 'or other intoxicating liquors?'

"So, while the question here presented has not been considered by our highest court in its present form, we have both judicial and legislative sanction which clearly indicate that these words, as found in

section 2557, were intended to prohibit the use of intoxicants, and as spirituous, vinous and malt liquors are as a general rule intoxicants, these terms were used in the several statutes and the Constitution as a name to designate intoxicating liquors; and when in 1898 it was found that other intoxicants were being sold which could not be shown or proven to be either spirituous, vinous or malt liquors, the legal horizon was enlarged by the act of that year, which provides a penalty for vending intoxicants whose makeup was unknown or shown to be other than the intoxicants already prohibited under section 2557. In construing statutes, the cardinal rule is to ascertain the legislative intent, and, when it is ascertained, it controls, and in all cases the mere letter must yield to the spirit of the enactment. As is said in the Bible, 'the letter killeth, but the spirit maketh alive.' Certainly the purpose of the lawmakers in enacting the local option law was to prohibit and prevent the evils of intemperance caused and coming from the use of intoxicating liquors as a beverage. This being, as we view it, the correct construction or exposition of what is meant and included in and by the words 'spirituous, vinous or malt liquors,' as used in section 2557, Ky. St., and it being agreed that the defendants did not sell liquors that would or will intoxicate, the cases against them will be dismissed.''

Judgment affirmed.

O'Rear, J., dissents.