[No. 13497. *En Banc.* November 22, 1916.]

THE STATE OF WASHINGTON, *Respondent*, v. ALVIN HEMRICH, *Appellant*.[1]

INTOXICATING LIQUORS — PROHIBITION — STATUTES — CONSTRUCTION. Rem. 1915 Code, § 6262-1 providing that the state wide prohibition law shall be liberally construed as an exercise of the police power for the protection of the economic welfare, health, peace and morals of the people precludes a strict construction thereof as a penal statute.

SAME—PROHIBITION—POLICE POWER—NONINTOXICATING BEVERAGES. In the exercise of the police power, the legislature or the people in prohibiting the sale of intoxicating liquors may prohibit the sale of nonintoxicating beverages, and may conclusively define such beverages as intoxicating liquors, within the meaning of the prohibition act, whenever that course has any reasonable relation to the accomplishment of the dominant purpose.

SAME—PROHIBITION—STATUTES—"LIQUORS." The term "liquor" in the prohibition law does not, *ex vi termini*, mean an alcoholic or intoxicating liquid.

SAME — PROHIBITION — STATUTES—"ANY OTHER INTOXICATING LIQUORS"—EJUSDEM GENERIS. Under Rem. 1915 Code, § 6262-2, defining intoxicating liquor to include whiskey, brandy, gin, rum, wine, ale, beer, and any spirituous, vinous, fermented or malt liquor, "and every other liquor or liquid containing intoxicating properties," the

[1]Reported in 161 Pac. 79.

words "and every other," etc., do not limit the act to "intoxicating liquors," but adds to the things specifically enumerated; hence the act includes "malt," liquors that are not intoxicating, and the rule of *ejusdem generis* has no application.

SAME—PROHIBITION—PROSECUTION—INTOXICATING QUALITIES — PRE-SUMPTION AND PROOF. Under the state wide prohibition act, Rem. 1915 Code, §6262-2, defining intoxicating liquors, the liquors enumerated by name are conclusively presumed to be intoxicating, and as to "any other intoxicating liquors" capable of being used as a beverage, the intoxicating quality must be proved.

SAME — PROHIBITION — STATUTES — "MALT LIQUORS." The words "malt liquors," in Rem. 1915 Code, § 6262-2, are not used in a technical sense, but mean, as defined in the standard dictionaries, an alcoholic and fermented liquor brewed from malt and do not include a nonalcoholic or nonfermented liquor containing "malt."

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 24, 1916, upon a conviction of violating the state-wide prohibition law, upon stipulated facts, after overruling a demurrer to the information. Reversed.

*McClure & McClure* and *Greene, Henry & Hemrich,* for appellant.

*Alfred H. Lundin* and *Frank P. Helsell* (*Walter F. Meier,* of counsel), for respondent.

ELLIS, J.—Defendant was accused of a violation of the state wide prohibition law, commonly known as initiative measure No. 3. Laws of 1915, p. 2; Rem. 1915 Code, § 6262-1 *et seq.* The information charged that:

"He, said Alvin Hemrich, in the county of King, state of Washington, on the 9th day of February, 1916, did then and there wilfully and unlawfully sell to one Fred M. Lathe certain intoxicating liquor, to wit: two bottles containing malt liquor, said malt liquor not then and there containing any alcohol, and being commonly known as 'Lifestaff,' receiving in payment therefor from said Fred M. Lathe the sum of twenty-five cents."

He demurred to the information, and it was stipulated that, in considering the demurrer, the court might consider as

established certain agreed facts so far as they would be admissible as evidence if the cause were being tried on its merits after a plea of not guilty. These agreed facts were, in substance, as follows: (1) That defendant was, and for a long time had been, president of a corporation which, prior to January 1, 1916, was engaged in the manufacture and sale of beer in the state of Washington; that, immediately after that date, it surrendered its government license and remodelled its brewery and plant for the manufacture of "Lifestaff," so that on February 9, 1916, they were not adapted to the manufacture of beer without extensive alterations in equipment and the issuance of a new license from the United States government. (2) "That the liquid in the information herein referred to as Lifestaff is an unfermented liquid and is entirely free from alcohol, preservatives or other harmful substances, but contains between six and seven per cent of extract of malt; that it is a healthful and nutritious liquid, capable of being drunk, but the character of the liquid itself is such that it is not intoxicating, does not in fact contain intoxicating properties, and is not capable of being imbibed in unusual quantities for merely social purposes." (3) That the term "Lifestaff" has been copyrighted under the Federal laws and appropriated as a trade-mark under the state law. (4) That L. E. Kirkpatrick, president and attorney of the Anti-Saloon League for the state of Washington, and who prepared initiative measure No. 3 as submitted to and adopted by the people, would testify that, in the conferences held to prepare the act, there was, to his knowledge, no discussion of or expressed intention to prohibit by the act the manufacture or sale of any liquor not containing alcoholic properties; that he was then not aware that a process had been discovered for removing all alcohol from malt liquor, and that the question of prohibiting the manufacture and sale of malt liquor not containing alcohol was not considered by him nor discussed by others in his presence; that, in preparing the original draft of the act, the definition of intoxi-

cating liquors as given therein was prepared, using as a basis the definition as given in the laws of various states having prohibition laws, and that he did not consider, nor did others with whom he consulted discuss, the operation of the proposed law as affecting the manufacture and sale of malt liquors not containing alcohol; that, so far as his knowledge goes, the general policy of the Anti-Saloon League and those associated with it has been to abolish only the manufacture and sale of liquors containing alcohol. (5) That George D. Conger, state superintendent of the Anti-Saloon League, would testify substantially to the same effect. (6) That the title of the measure as originally drafted and filed in the office of the secretary of state was as follows:

"An act relating to intoxicating liquors, prohibiting the manufacture, keeping, sale and disposition thereof, except in certain cases, the soliciting and taking of orders therefor, the advertisement thereof and the making of false statements for the purpose of obtaining the same, declaring certain places to be nuisances and providing for their abatement, regulating the keeping, sale and disposition of intoxicating liquors by druggists and pharmacists, the prescription thereof by physicians, the transportation thereof, and providing for the search for and seizure and destruction thereof, prescribing the powers and duties of certain officers, and the forms of procedure and the rules of evidence in cases and proceedings hereunder, and fixing penalties for violations hereof, and the time when this act shall take effect." Laws 1915, p. 2.

(7) That the ballot title as proposed by the *Attorney General* was as follows:

"An act prohibiting the manufacture, sale, or other disposition of intoxicating liquors, except in certain cases; regulating the keeping, use and transportation of the same; providing for the enforcement of this act; and fixing punishments and penalties for the violation thereof."

(8 and 9) That in the printed arguments for and against the measure, distributed among the legal voters of the state as required by law, there was nothing advising the voters that the act was intended to prohibit the manufacture or sale

of nonalcoholic malt liquors as a means to the more effective enforcement of the law as against alcoholic liquors. The two bottles of Lifestaff were submitted as exhibits. The trial court overruled the demurrer. Defendant, electing to stand upon his demurrer and the stipulated facts, was adjudged guilty as charged. From the judgment and sentence thereon, he has appealed.

Appellant broadly contends that "Lifestaff" is not a liquor the manufacture and sale of which is intended to be prohibited by our statute, because it is admitted that it contains no alcohol, no intoxicating properties, and will not in fact intoxicate.

It is first argued that our prohibition law, initiative measure No. 3, Laws of 1915, p. 2 (Rem. 1915 Code, § 6262-1 et seq.), is a penal statute and hence, under the general rule, must be strictly construed, and that, so construed, it embraces only intoxicating liquors. We shall not review the many authorities cited announcing the general rule that penal statutes must be strictly construed, since the first section of the law itself answers this argument. It imposes its own rule of construction. It says:

"This entire act shall be deemed an exercise of the police power of the state, for the protection of the economic welfare, health, peace and morals of the people of the state, and all of its provisions shall be liberally construed for the accomplishment of that purpose." Rem. 1915 Code, § 6262-1.

We must, therefore, construe the act liberally and inclusively with a view to the accomplishment of its full purpose. It is true that the dominant purpose of the law is to prohibit the manufacture and sale of intoxicating liquors, to the end that the economic welfare, health, peace and morals of the people may be promoted. Both the title of the act and the ballot title by which it was submitted to vote so show. But in the exercise of the police power the legislature, or the people acting in a legislative capacity, may, without impinging either the state or the Federal constitution, prohibit the sale

of beverages not intoxicating in fact and wholly innocuous when separately considered, and may conclusively define such beverages as intoxicating liquors within the meaning of the prohibitory law whenever that course has any reasonable relation to the accomplishment of the dominant purpose. "This is no longer a question for argument or even of doubt." *State v. Frederickson*, 101 Me. 37, 63 Atl. 535, 115 Am. St. 295, 6 L. R. A. (N. S.) 186; *Purity Extract & Tonic Co. v. Lynch*, 226 U. S. 192. If, therefore, any beverage of such composition and character as reasonable to include the stuff called Lifestaff is expressly prohibited or defined by our law as an intoxicating liquor, then Lifestaff is prohibited.

It is next argued that nothing except "liquor" is prohibited, and that the word "liquor," *ex vi termini*, means an alcoholic or intoxicating liquid, and that, therefore, nothing but alcoholic or intoxicating liquids are prohibited. It is true that such is one of the meanings of the word "liquor," but all of the standard dictionaries agree that it also means a liquid of any sort. See Century Dictionary; Webster's New International Dictionary; and Standard Dictionary. The first two of these, the three leading dictionaries, give the meaning of the noun "liquor" as synonymous with the noun "liquid," and the third gives the same meaning as a secondary definition. It can hardly be said, therefore, that the word "liquor" has any such settled and exclusive meaning of an alcoholic or an intoxicating liquid as to make it the basis of a persuasive, much less of a conclusive argument, for such a construction of the statute. Appellant's minor premise failing, his argument fails.

A further argument is based upon the statutory definition of the term "intoxicating liquor" as found in § 2 of our prohibitory law, Laws of 1915, page 2 (Rem. 1915 Code, § 6262-2), which reads as follows:

"The phrase 'intoxicating liquor,' wherever used in this act, shall be held and construed to include whiskey, brandy, gin, rum, wine, ale, beer and any spirituous, vinous, fermented or

malt liquor, and every other liquor or liquid containing intoxicating properties, which is capable of being used as a beverage, whether medicated or not, and all liquids, whether proprietary, patented or not, which contain any alcohol, which are capable of being used as a beverage."

Respondent concedes that the only term in this definition which can reasonably include a nonalcoholic nonintoxicating liquor, such as Lifestaff is admitted to be, is the term "malt liquor." Appellant urges that the clause "and every other liquor or liquid containing intoxicating properties" limits and restricts the classes of liquor specifically enumerated and preceding it to such liquors or liquids as contain intoxicating properties and that, therefore, the term "malt liquor" cannot include Lifestaff. It is insisted that such is the necessary significance of the word "other" as found in the alleged qualifying clause. Several decisions from other states are cited as sustaining this view. Typical and strongest of these are *Bowling Green v. McMullen*, 134 Ky. 742, 122 S. W. 823, 26 L. R. A. (N. S.) 895, and *People v. Strickler*, 25 Cal. App. 60, 142 Pac. 1121. In the *McMullen* case, the stipulated facts admitted that the liquor, called "next-to-beer," was a malt liquor containing less than two per cent and more than one-half of one per cent of alcohol and was nonintoxicating, that is to say, in the largest quantities in which it might be drunk it would not intoxicate. The statute defined the inhibited liquors as "spiritous, vinous, malt and other intoxicating liquors." The question was whether malt liquor which would not intoxicate was within this definition. It was held that the inhibition was only against intoxicating drinks. The court said: "If not, why use the words 'or other intoxicating liquors'?" However conclusive this may seem to the court which announced it, it seems far from conclusive to us. The answer to the court's question seems plain. The general words, "or other intoxicating liquors," were intended to add to the things theretofore specifically enumerated, not to take away from or limit what

had already been included. Moreover, even assuming the argument sound as applied to the statute there involved, that statute is palpably different from ours. It might be argued with some show of reason that the word "other" as there used qualifies the term "intoxicating liquors" as a whole. That statute says: "or other intoxicating liquors." In our statute the collocation of the words is different. It says: "Every other liquor or liquid," the word "other" thus qualifying only the words "liquor or liquid" which are subsequently qualified by the words "containing intoxicating properties." *State v. Bailey*, 67 Wash. 336, 121 Pac. 821.

Our statutory definition was clearly intended to define as intoxicating liquors three distinct groups: (1) Whiskey, brandy, gin, rum, wine, ale, beer and any spirituous, vinous, fermented or malt liquor; (2) every other liquor or liquid containing intoxicating properties which is capable of being used as a beverage, whether medicated or not; (3) all liquids, whether proprietary, patented or not, which contain any alcohol which are capable of being used as a beverage. The first group defines, *eo nomine*, as intoxicating liquors certain specific liquids without reference to their properties, because they are all liquors which are generally understood to contain alcohol in some quantity. The second group merely adds to the things prohibited another class of prohibited liquors with no description save the *intoxicating* quality. The third group adds still another class to the things already prohibited, namely, liquids whether proprietary or not, describing them by their *alcoholic* property. The words "every other liquor or liquid containing intoxicating properties" qualify nothing else, but describe and add another class to the things the sale and manufacture of which are prohibited. The clause quoted was intended to add and include, not to limit or restrict.

In the case of *People v. Strickler, supra*, a demurrer to an information charging the sale of malt liquor containing less than one per cent of alcohol was sustained by the trial court

and the people appealed. The statute defined the term "alcoholic liquors" as follows:

"The term 'alcoholic liquors' as used in this act shall include spirituous, vinous and malt liquors, and any other liquor or mixture of liquors which contain one per cent by volume, or more, of alcohol and which is not so mixed with other drugs as to prevent its use as a beverage."

The supreme court affirmed the judgment on the ground that, under the rule *ejusdem generis*, the specific words "spirituous, vinous, and malt liquors" were qualified and controlled by the succeeding clause "any other liquor or mixture of liquors which contain one per cent, by volume, or more, of alcohol." The decision is obviously unsound. It reverses the rule of *ejusdem generis* in order to make the general terms of the statutory definition control the particular terms. The correct application of that rule in statutory construction is just the converse.

"In statutory construction, the '*ejusdem generis* rule' is that where general words follow an enumeration of persons or things by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." Black's Law Dictionary, p. 415.

See, also, Bouvier's Law Dictionary (Rawle's Third Revision), p. 979. The fact is that the rule *ejusdem generis* has nothing to do with the case. The statute there under construction, as ours, defined one group by specific enumeration and a second group by quality. The *McMullen* case makes the same mistake in argument, though not labeling the process as an application of the rule *ejusdem generis*. In the following cases, in which the same argument was advanced as that of appellant here, the courts have ruled contrary to his contention. In each of these cases the general clause in the statute included the word "other," as here. *Marks v. State*, 159 Ala. 71, 48 South. 864, 133 Am. St. 20; *Fuller v. Jack-*

*son*, 97 Miss. 237, 52 South. 873, 30 L. R. A. (N. S.) 1078;
*LaFollette v. Murray*, 81 Ohio St. 474, 91 N. E. 294;
*United States v. Cohn*, 2 Ind. Terr. 474, 52 S. W. 38. In the
*Marks* case, the statute was much like ours. It prohibited:

"Any alcoholic, spirituous, vinous or malt liquors, intoxicating bitters or beverages or other liquors or beverages by
whatsoever name called, which if drunk to excess will produce
intoxication, . . ."

In answer to the argument here advanced, the court said:

"While we agree in part with counsel for appellant, we
cannot concur with them in the contention (so forcibly and
ably insisted upon) to the effect that the clause, 'which if
drunk to excess will produce intoxication,' qualifies and relates to each and all of the liquors or beverages which precede it—that is, to alcoholic, spirituous, vinous, or malt
drinks. We are inclined to the opinion that this phrase
qualifies or refers only to the clause, 'or other liquors or
beverages by whatsoever name called,' which immediately
precedes it, and which two phrases, taken together, constitute one of the six classes of liquor and beverage the sale of
which is prohibited. We are led to this conclusion, not alone
by the composition, and grammatical construction of this
section of the act, but also by a reference to the history of
such legislation in this and other states, and the judicial
construction put upon the terms 'spirituous,' 'vinous,' 'malt,'
and 'intoxicating' liquors and beverages by this and other
courts. These terms each had a well defined and accepted
judicial construction by the courts, when used in such
statutes; and it does not appear that there was any intention
to change that well accepted judicial construction. They
were severally treated as being well known and defined; but
the phrase, 'or other liquors or beverages by whatsoever
name called,' is clearly shown not to refer to every well
known or defined class, but is intended to include any and
all other classes or kinds, not embraced in the foregoing five
classes named, 'which if drunk to excess will produce intoxication.'"

The reasons given in the other decisions cited for holding
the same way are equally cogent. It will not avail to use

the argument of convenience to the effect that our construction will make the sale of "ginger ale" and "root-beer" criminal. These things have as distinctive a meaning in common parlance as ale or beer have when standing alone. They, like other unnamed beverages, will have to be tested by the fact whether they contain intoxicating properties, since they are not enumerated by name in the statutory definition of intoxicating liquors. *Sawyer v. Botti,* 147 Iowa 453, 124 N. W. 787, 27 L. R. A. (N. S.) 1007. We hold, therefore, that the liquors enumerated by name in our statutory definition of intoxicating liquors are conclusively presumed to be intoxicating liquors without regard to their actual intoxicating properties and whether in potable quantities they will in fact intoxicate or not. That, as to such liquors, it is only necessary to prove that the thing sold was of the class named, but that as to other liquors or liquids capable of being used as a beverage, it is necessary to prove their intoxicating properties. It is conceded that Lifestaff cannot belong to either the second or third class mentioned in the statutory definition. By this process of elimination, the question here involved is finally reduced to this: Is the stuff called Lifestaff a malt liquor? If it is, it is prohibited whether it contains intoxicating properties or not, and whether it contains alcohol or not.

The first cardinal rule of construction is that words used in a statute, unless the context shows that they are used in a technical or particular sense, are to be given their ordinary meaning. 2 Lewis' Sutherland, Statutory Construction (2d ed.), p. 749, § 390; Endlich, Interpretation of Statutes, p. 4, § 2. It follows that the words "malt liquor," which are evidently used in no technical sense, must be given the meaning accorded to them in the standard dictionaries of our language. The following are the definitions given by the three dictionaries universally recognized as authority:

Standard Dictionary: "*Malt liquor,* any alcoholic beverage brewed from malt."

15—93 WASH.

Century Dictionary: *"Malt liquor*, a general term for an alcoholic beverage produced merely by the fermentation of malt as opposed to those obtained by the distillation of malt or mash."

Webster's New International Dictionary: *"Malt liquor*, an alcoholic liquor as beer, ale, porter, etc., prepared by fermenting an infusion of malt."

We have been unable to find any definition giving to the term malt liquor any other meaning than the above, whether technical or not. The text books are equally in unison. Joyce, Intoxicating Liquors, p. 12, § 12, defines malt liquor as follows:

"The common and approved usage of the term 'malt liquor' is 'an alcoholic liquor as beer, ale or porter, prepared by fermenting an infusion of malt.' 'Malt liquors' embrace porter, ale, beer, and the like, which are the result or product of a process by which grain—usually barley—is steeped in water to the point of germination, the starch of the grain being thus converted into saccharine matter, which is kiln dried, then mixed with hops, and, by a further process of brewing, made into a beverage. In Alabama it has been decided that the court will take judicial notice of the meaning of the words 'malt liquor' as used in a penal statute, and may, in a proper case, give its definition in a charge to the jury."

Black's Law Dictionary, p. 752, defines the term as follows:

*"Malt liquor*. A general term including all alcoholic beverages prepared essentially by the fermentation of an infusion of malt (as distinguished from such liquors as are produced by the process of distillation), and particularly such beverages as are made from malt and hops, like beer, ale, and porter."

26 Cyc. 121, defines the term as follows:

*"Malt liquor*. An alcoholic liquor, as beer, ale, or porter, prepared by fermenting an infusion of malt; a general term for alcoholic beverages produced merely by the fermentation of malt as opposed to those obtained by distillation of malt or mash."

19 Am. & Eng. Ency. Law (2d ed.), p. 705, defines it as follows:

"*Malt liquor.* Malt liquor is a general term for an alcoholic beverage produced merely by fermentation of malt, as opposed to those obtained by distillation of malt or mash."

Wherever any court has essayed a definition of the term "malt liquor," it is in strict accord with the foregoing definitions.

In *Pennell v. State*, 141 Wis. 35, 123 N. W. 115, 116, the court defined the terms spirituous liquor, malt liquor and vinous liquor as follows:

"The word 'liquor' in a statute regulating or forbidding the sale of intoxicants should be taken to mean an alcoholic beverage. Cent. Dict.; Standard Dict.; *People v. Crilley*, 20 Barb. 246; *U. S. v. Cohn*, 2 Ind. Terr. 474, 52 S. W. 38. The associated word 'drinks' in such statute means an alcoholic beverage. *State v. Oliver*, 26 W. Va. 422. Alcohol is a product of fermentation. Malting is a process preliminary to fermentation. Alcohol is separated, not produced, by distillation, and the liquor thus separated containing a percentage of alcohol is called spirituous liquor. Where there is no such separation, but the alcohol produced by fermentation remains in the liquid drawn off from the malt, the product is called malt liquor. Where the production of alcohol by fermentation is preceded by no malting process, as in the case of wine, the product is called vinous liquor."

In *Marks v. State, supra,* the court says:

" 'Malt liquors' are the product of a process by which grain is steeped in water to the point of germination, the starch of the grain being thus converted into saccharine matter, which is kiln dried, then mixed with hops, and, by a further process of brewing, made into a beverage. . The term embraces porter, ale, beer, and the like."

Though in the last definition the term "fermentation" is not used, but "brewing" instead, the term "brewing" itself includes fermentation. See Standard Dictionary; Webster's New International Dictionary; Century Dictionary.

In *United States v. Ducournau,* 54 Fed. 138, it was said:

"The ordinary acceptation of the term 'malt liquor' imports a fermented liquor, made chiefly of malt;  . . ."

In *Sarlls v. United States,* 152 U. S. 570, Justice Shiras adopted the definition given in the Century Dictionary and above quoted.

In *State v. Gill,* 89 Minn. 502, 95 N. W. 449, the court said:

"But the defendant claims that there are some malt liquors which are not intoxicating; hence the complaint should have alleged the sale of an intoxicating malt liquor.  This is just what the complaint did do without any tautology, for the term 'malt liquors' is used in the charter of the city, in the ordinance in question, and in the complaint in accordance with the common and approved usage of the term, and not in any technical sense.  G. S. 1894, § 255.  The common and approved usage of the term 'malt liquor' is 'an alcoholic liquor, as beer, ale or porter, prepared by fermenting an infusion of malt.'  Webster's International Dictionary."

In *State v. Lynch* (Del.), 96 Atl. 32, the court used the following language:

"Malt liquor, or beer, as is commonly known, is a brewed liquor made of grain, especially barley, flavored with hops, and is a liquor which has undergone fermentation, and contains alcohol."

In *Ex parte Townsend,* 64 Tex. Cr. 350, 144 S. W. 628, Ann. Cas. 1914C 814, we find the following language:

"This leads to the inquiry of what is malt liquor.  Mr. Joyce, in his work on Int. Liq. § 12, defines it as follows: 'The common and approved usage of the term 'malt liquor' is an alcoholic liquor, as beer, ale, porter, prepared by fermenting an infusion of malt.'  The Century Dictionary defines it as a 'general term for an alcohol [alcholic] beverage produced merely by the fermentation of malt.'  So, then, it is clear that all malt liquor is an alcoholic liquor, and the legislature in this instance was dealing with a non-intoxicating alcoholic liquor.  Intoxicating liquor is any liquor containing alcohol which can be drunk as a beverage in such quantity as will produce intoxication."

We have set out the foregoing definitions in order to show the absolute unanimity of opinion that "malt liquor" is an alcoholic liquor and is a fermented liquor. Fermentation produces alcohol. Every malt liquor is fermented and hence contains at least some percentage of alcohol. Unless the foregoing definitions are all wrong, such is the inevitable conclusion to which we are driven. The mere fact that a liquid contains malt does not bring it within any definition of the words "malt liquor" which can be found in any recognized dictionary, text book or in any definition given by any court. Malt is neither fermented nor does it contain alcohol. It is defined in the Century Dictionary as follows:

"Grain in which, by partial germination, arrested at the proper stage by heat, the starch is converted into saccharine matter (grape-sugar), the unfermented solution of the latter being the sweetwort of the brewer. By the addition of hops, and the subsequent processes of cooling, fermentation, and clarification, the wort is converted into porter, ale, or beer. The alcoholic fermentation of the wort without the addition of hops, and distillation, yield crude whiskey."

It is defined in Black's Law Dictionary as follows:

"*Malt.* A substance produced from barley or other grain by a process of steeping in water until germination begins and then drying in a kiln, thus converting the starch into saccharine matter."

We have been cited to but one case, and have been unable after many days of search to find another, in which any liquor or liquid has been held to be a malt liquor merely because it contained some percentage of malt. That case is *Purity Extract & Tonic Co. v. Lynch,* 100 Miss. 650, 56 South. 316. The liquid there involved was called "Poinsetta." It was admitted that it contained no alcohol, preservatives or saccharine; that it was sold as a beverage, that it was composed of 90.45 per cent pure distilled water, 9.55 per cent of solids derived from cereals in an unfermented state, and that it contained 5.73 per cent of malt. It was admitted that the grain

used was not fermented or steeped in such a way as to produce either saccharine matter or alcohol. On these facts the court said:

"In the discussion of this case we start out with the admission of counsel that this drink is a beverage containing no alcohol, it is true, but containing 5.73 per cent of malt, and we unhesitatingly pronounce the beverage a malt liquor. It can be nothing else."

Had that court hesitated long enough to look at any standard dictionary, any law dictionary or the decision of any court in which the term "malt liquor" had been defined, it would have found that the mere fact that a liquid beverage contains malt does not make it a malt liquor, unless it be also fermented and is alcoholic. We are asked to proceed in the same unhesitating manner and pronounce the beverage here involved a malt liquor in the face of every other decision where the question has arisen. Malt liquor is both alcoholic and fermented. While the generic term "malt liquor" includes both intoxicating and nonintoxicating liquors, this is because some liquors which are both fermented and contain alcohol have too small a percentage of alcohol to produce intoxication in any quantity which a person may be able to take at one time. This is the distinction found in many of the cases between intoxicating and nonintoxicating malt liquors. Lifestaff, the liquid here involved, is concededly neither alcoholic nor fermented. It is, therefore, not a malt liquor. None of the decisions cited by either side save the *Lynch* case sustains the other view. On the contrary, so far as they have any bearing at all on the meaning of the term "malt liquor," they impliedly sustain the conclusion which we have reached. The *Lynch* case was appealed to the supreme court of the United States (*Purity Extract & Tonic Co. v. Lynch*, 226 U. S. 192), but that court, holding itself bound by the decision of the state court as to the scope of the Mississippi statute, did not pass upon the question whether Poinsetta was or was not

a malt liquor. On the contrary, it held that it had no juris-
diction to pass upon that question.

In the following cases, cited by respondent, the sale of
"malt liquor" was prohibited *eo nomine* by the statute in-
volved. It was held that it was neither necessary to allege nor
prove that the "malt liquor" in question in the given case was
capable of producing intoxication. But in each of these cases
the liquor involved was either admitted to be a "malt liquor,"
or admitted or proved to be a fermented liquor containing
both malt and alcohol—hence was either admitted to be or
proven to be such a liquor as is defined to be a "malt liquor"
by the dictionaries. In *Fuller v. Jackson*, 97 Miss. 237, 52
South. 873, 30 L. R. A. (N. S.) 1078, same case on sug-
gestion of error, 52 South. 876, the liquor was "malt ale."
The agreed facts showed that it contained 2.71 per cent of
alcohol by volume and conceded that it was a "malt liquor."
The statute prohibited:

"Any vinous, alcoholic, malt, intoxicating, or spirituous
liquors, or intoxicating bitters, or other drinks, which if drunk
to excess will produce intoxication, . . ."

It was held that the liquor in question, being "malt liquor,"
was prohibited in terms whether it would in fact intoxicate or
not.

In *Ex parte Lockman*, 18 Idaho 465, 110 Pac. 253, 46 L.
R. A. (N. S.) 759, the liquor was "near beer." It was ad-
mitted that this near beer was a "malt liquor." The undis-
puted evidence showed that it contained 1.28 per cent alcohol
and 7.1 per cent malt extract, but did not contain enough al-
cohol to intoxicate in the largest quantity which could be con-
sumed at one time. The statute defined intoxicating liquors
as follows:

"The words 'intoxicating liquors' as used in this act shall
be deemed and construed to include spirituous, vinous, malt
and fermented liquors, and all mixtures and preparations
thereof, including bitters and other drinks that may be used
as a beverage and produce intoxication."

The court said:

"The legislature likewise recognized the fact that vinous, malt and fermented liquors all contain, to some extent, the element of alcohol, although it may not be to such a degree as will produce intoxication. They therefore concluded when writing this statute defining the words 'intoxicating liquors,' to declare as a matter of law that all 'sprituous, vinous, malt, and fermented liquors' are intoxicating, irrespective of the amount of alcohol they may contain, and whether or not the particular kind of drink will in fact produce intoxication."

Held: The liquor in question being concededly a "malt liquor," was declared by the statute, as a matter of law, to be intoxicating liquor and prohibited.

In *Brown v. State*, 17 Ariz. 314, 152 Pac. 578, the liquor was called "Barette." It was conceded that it contained 1.96 per cent of alcohol by volume. It was conceded to have been made by the same process as beer, except that it was made from "barley, rice and hops," while beer is made from "barley and hops." The undisputed evidence showed that it was non-intoxicating in the largest quantity which could be drunk. The constitution of Arizona prohibits the manufacture or sale in that state of any "ardent spirits, ale, beer, wine, or intoxicating liquor or liquors of whatever kind." The case was tried to the court without a jury. The court said:

"We are forced to the conclusion that the word 'beer.' as used in the constitution, does not mean an intoxicating liquid only, but also a nonintoxicating fermented malted liquor, even though it be not intoxicating; that is, if the liquor be 'beer' as defined and historically known by the standard lexicographers and by the courts, its traffic is forbidden by the constitution. If the article involved in this case falls within the well-known definition of 'beer,' whether it be intoxicating or not, the appellant's act was criminal and subjects him to punishment."

Then quoting various definitions of "beer" from Century Dictionary, Webster's Dictionary, Standard Dictionary, Encyclopedia Britannica, Joyce on Intoxicating Liquors, and Woollen and Thornton on Intoxicating Liquors, the court

held that the liquor, being beer, was prohibited *eo nomine* by the constitution whether intoxicating or not.

In *Douglas v. State*, 21 Ind. App. 302, 52 N. E. 238, the stuff sold was called "hop ale." The indictment charged a sale of "beer." There was evidence tending to show that it was in fact beer. There was also evidence that it was not beer and was not in fact intoxicating. There was no evidence that it was not of a malted and fermented quality. The statute declared "the words 'intoxicating liquor' shall apply to any spirituous, vinous, or malt liquor, or any intoxicating liquor whatever which is used or may be used as a beverage." The court instructed the jury that " 'beer,' in the estimation of the law, is fermented liquor, made from any malted grain, with hops or other bitter flavoring matter." He also instructed that only a sale of "beer" as charged in the indictment could sustain a verdict of guilty, and that:

"It is claimed by the defendant that the liquid on the occasion referred to in the indictment was hop ale, which is not intoxicating. As heretofore stated, the question for you to determine is not whether hop ale was sold, or whether hop ale is intoxicating, or whether beer is intoxicating, but your attention must be directed to the fact whether the liquor called hop ale was, in fact, beer, and whether it was sold as charged in the indictment."

On appeal, these instructions were approved. The court said:

"If the court, as matter of law, must know that beer is a malt liquor, it is not necessary to a conviction for the jury, besides finding a sale of beer, to find also, as a matter of fact, that beer—that is, malt liquor—is intoxicating."

In *United States v. Cohn*, 2 Ind. Terr. 474, 52 S. W. 38, the liquor sold was "Rochester Tonic." The evidence showed that it was made in the same manner as beer and was, in fact, the second draw or brew from the mash from which beer had previously been made, and that it was simply beer with a less percentage of alcohol than is contained in ordinary beer. It

contained 3 per cent of malt extract and 1.73 per cent alcohol.
It was admitted that Rochester Tonic was a malt liquor. It
was conceded in argument that the stuff contained two per
cent and under of alcohol and would not intoxicate. The
statute prohibited the sale of "any vinous, malt or fer-
mented liquors, or any other intoxicating drinks of any kind
whatsoever." A prior statute had prohibited "ale and beer."
The court said, at pages 500, 502:

"The evident object of Congress in making the change of
phraseology in the statute from 'ale and beer' to 'any malt or
fermented liquors' was not to exclude that which the old had
included, but it was to include in the new law that which was
excluded by the old, by using an expression broad enough to
cover all forms and kinds of alcoholic drinks. . . .

"The law as it existed prior to the act of 1895 prohibited
ale and beer in all of their forms. The first act passed after-
wards, relating to the same conditions, prohibits malt liquors,
ale and beer, in all of their forms. Did Congress intend to
make an exception in the act of 1895? We think not, and
therefore hold that malt and fermented liquors, when to be
used as beverages or for drinks, are prohibited by the statute,
in all of their forms, and the question as to whether or not
they are intoxicating is immaterial."

In *Sawyer v. Botti,* 147 Iowa 453, 124 N. W. 787, 27 L.
R. A. (N. S.) 1007, the action was to enjoin the sale of
"justus beer," and was, of course, tried to the court. The
evidence showed that, in the manufacture of justus beer, the
same materials were used as in lager beer, and the process of
malting and extracting were the same, except that the pro-
cess of fermentation was arrested before any considerable
amount of alcohol was produced, so that justus beer con-
tained about one-half of one per cent of alcohol by volume,
while lager beer contains three and one-half per cent of alco-
hol. The evidence further showed that justus beer was not
intoxicating because no ordinary person could imbibe enough
at one time to get sufficient alcohol to produce intoxication.
The statute prohibited the sale of "intoxicating liquor," ex-
cept as otherwise provided and defined that term to mean

"alcohol, ale, wine, beer, spirituous, vinous and malt liquor, and all intoxicating liquor whatever." The injunction was granted. On appeal the supreme court affirmed the decree, saying:

"We reach the conclusion without the slightest doubt that the beverage in question, *being a liquor manufactured from malted grain by a process involving fermentation,* no matter how slight the fermentation may be, and irrespective of the amount of alcohol which it actually contains, and also without regard to whether it is in fact intoxicating, is within the statutory description of liquors the sale of which is prohibited. It is conceded that the process of manufacture of justus beer is the same as that of lager beer, save that the fermentation is arrested at an earlier stage, and therefore less alcohol is contained in the product. We think that such liquor is 'beer' within the statutory definition, but, whether so or not, it is unquestionably a malt liquor." [Italics ours.]

The court thus clearly recognized the elements of *fermentation of malt and at least some trace of alcohol* as the essential and distinctive features of malt liquors, just as do all of the dictionaries, though the liquid in question was not intoxicating.

In *Luther v. State,* 83 Neb. 455, 120 N. W. 125, 20 L. R. A. (N. S.) 1146, the defendant was charged with selling without a license, "a certain malt and intoxicating liquor, to wit, malt tonic." The undisputed evidence showed that the liquor contained 1.1 per cent of alcohol and was "in the class of beers." The manufacturer's label stated that it contained "less than 2 per cent of alcohol" and was "brewed." The statute prohibited the sale of "malt, spirituous, or vinous liquors, or any intoxicating drinks," without a license. The court held that, as to the character of the liquor, it was not necessary to prove more than that it was a "malt liquor." In answer to the claim that there was no proof that it would intoxicate, the court said:

"At any rate, the law prohibits the sale of 'malt liquors' without a license, and we must obey its plain mandate. Alco-

holic beverages are under the ban of the law in some form or other in most civilized countries. They are known to be the cause of crime, destitution and pauperism. *Malt liquors used as beverages are known to contain that destructive ingredient.* It was proven upon the trial of this case that the beverage kept and sold by plaintiff in error contained it. The liquor sold by him was simply an effort to evade the law. The title of the act is 'An act to regulate the license and sale of malt, spirituous, and vinous liquors,' etc. The whole act is built upon that title. Malt liquors are as much within both the letter and spirit of the law as either of the other classes named. To say that the legislature intended to provide for the regulation and license of intoxicating malt liquors would require the same word to be used as defining the other classes, and would be legislating and reading into the statute a word which the legislature clearly intended should not be there. This is not the province of the courts." [Italics ours].

While the court did not define "malt liquor," it recognized that all malt liquors contain alcohol, thus agreeing with the definitions of the lexicographers, all of which, as we have seen, include the alcoholic element.

In *LaFollette v. Murray*, 81 Ohio St. 474, 91 N. E. 294, the liquor involved was "Friedon Beer." Defendant was sued for an occupation tax laid by statute on the trafficking in "spirituous, vinous, malt or other intoxicating liquors." The case was tried on an agreed statement of facts in which it was admitted that the stuff was "a malt liquor containing .47 of one per cent of alcohol, but not intoxicating." The court sustained a judgment for the tax, holding that the generic term "malt liquors" includes both nonintoxicating and intoxicating malt liquors. It did not attempt to define malt liquors because the liquor in question was admitted to be a malt liquor and contained alcohol.

In *State v. O'Connell*, 99 Me. 61, 58 Atl. 59, the defendant was indicted for being a common seller of intoxicating liquors. While the statute then in force in Maine is not set out in the opinion, the court said, "Rev. St. 1883, c. 27 § 33, amounts to a prohibition of the sale of malt liquor." The evidence

showed a sale of "Uno Beer, brewed from malt, and containing 2.36 per cent of alcohol." On the trial, the court refused to instruct that the jury must find the liquor was intoxicating, but did instruct that "if you find beyond a reasonable doubt that the beer in question was brewed from malt it was a malt beer, and comes within the prohibition of the statute." The supreme judicial court held that this was not error, saying:

"The issue was whether the defendant sold malt liquor. If he did sell it, it was in violation of the statute, and it was not necessary, in order to establish his guilt, for the jury to go further, revise the judgment of the legislature and determine whether malt liquor was or was not in fact intoxicating. . . .
"The presiding justice was not bound to define the term 'malt liquor.' *State v. Starr*, 67 Maine 242; *State v. Wall*, 34 Maine 165. While the court should define to the jury legal terms to which the law has attached a specific meaning, it is not required to define words in common and ordinary use the definition and meaning of which jurors are presumed to understand as well as the court."

If, as the court says, the common meaning is the true meaning of the term "malt liquor," then where the question, as here, is presented as one of fact for the court, we can only take that definition on which the dictionaries in common use are unanimous, namely, an "alcoholic beverage brewed from malt" or "produced by fermentation from malt." See Standard, Century and Webster's International Dictionaries above quoted.

In *Feibelman v. State*, 130 Ala. 122, 30 South. 384, the cause was tried to the court without a jury. The liquor sold was "hop jack." The evidence showed that it contained from 1.75 to 2 per cent alcohol, and "was produced by fermentation of malted barley, diluted with water, and was therefore a malt liquor," but in potable quantities was not capable of producing intoxication. The statute prohibited "the selling of spirituous, vinous, or malt liquors, or intoxicating bitters or beverages." The supreme court sustained a conviction on the ground that the statute expressly prohibited the sale of

"malt liquor" and that the evidence showed that "hop jack" was a malt liquor. The court further said:

"We may, for all the purposes of this case, concede, without indicating any opinion upon the question, that the legislature may not, in the exercise of the police power, prohibit the sale of a malt liquor which is not intoxicating nor otherwise deleterious in any way where the sole purpose and object is the prevention of the sale of that particular character or quality of malt liquor. But it is common knowledge that most malt liquors are intoxicating and harmful when used excessively, and are capable of excessive use as a beverage. The sale of all such of course the legislature has the power to prohibit."

Clearly the evidence there brought the hop jack within the exact terms of the Century Dictionary definition, "an alcoholic beverage produced merely by fermentation of malt," and within the specific meaning of the definitions found in the Standard and Webster's International Dictionaries.

*State ex rel. Guilbert v. Kauffman*, 68 Ohio St. 635, 67 N. E. 1062, was a suit in mandamus to compel the enforcement of a statute imposing a tax, "on the business of trafficking in any intoxicating liquors, and also on the business of trafficking in spirituous, vinous, or malt liquors." The petition alleged that the liquor involved was "a malt liquor or beverage commonly known as 'Bishop Beer' . . . which malt liquor or beverage contains less than two per cent of alcohol and is not intoxicating." The court overruled a demurrer to the petition on the ground that: "The generic term 'malt liquor' includes both nonintoxicating and intoxicating malt liquors." The court did not define the term "malt liquors" because the demurrer admitted the allegation of the petition that the stuff was a malt liquor and contained alcohol.

In *Flanders v. Commonwealth*, 140 Ky. 38, 130 S. W. 809, the liquor involved was called "temperance beer" or "Dr. Fizz." It was admitted to contain one per cent of alcohol. Witnesses who drank it testified that:

"The liquor looked like beer, smelt like beer, foamed like beer, and tasted like beer. Several of them testified that they

had drank beer many times, one of them that he had been a barkeeper, selling beer for some years, and that in their opinion the liquor was beer, somewhat diluted."

Defendant and the manufacturer testified that it was merely a carbonated water with one per cent of alcohol added. The statute prohibited the sale of "spirituous, vinous and malt liquors." The court took judicial notice that beer is a malt liquor, and instructed the jury that if it found that the decoction in question was "ordinary beer, a malt liquor," defendant should be found guilty. The appellate court approved this instruction, saying:

"As, therefore, the statute in terms prohibits the sale of malt liquors in local option territory, it is enough to inquire whether the liquor sold is malt liquor; if it is, the guilt is fixed. Whether it intoxicates some people or not, or is only a mild intoxicant, or whether defendant believed that it was an innocent soft drink, are immaterial."

In *Commonwealth v. Goodwin*, 109 Va. 828, 64 S. E. 54, one statute, known as the "Byrd law," a state revenue act, permitted the sale of "malt beverages" which it defined as:

"The product of a brewing plant, or brewery, and shall, as to its composition, comply with the standards now, or as may hereafter be prescribed by the pure food commissioner of the United States, but shall be nonintoxicating and in no event contain in excess of two and one-quarter *per cent.* in volume of alcohol."

Another statute prohibited licensing the sale of "ardent spirits, malt liquors, or any mixture thereof or any bitters containing alcohol" in any town except upon the written consent of the town council. The court held that "malt beverages" as defined in the first statute were "malt liquors" within the meaning of the second statute. Since "brewing" essentially involves fermentation it is clear that the definition of "malt beverages" in the Byrd law brings such beverages within the definition of "malt liquor" as found in all the dictionaries.

In *State v. Walder*, 83 Ohio St. 68, 93 N. E. 531, the statute defined "intoxicating liquor" as including "any distilled, malt, vinous or any intoxicating liquor whatever." The liquor sold was "near beer." The accused testified that it was made as other beer, only weaker; that it was then boiled so as not to contain any alcohol; that "sugar, etc." was then added and the mixture was "carbonated;" that "if you keep it in a warm place, it would generate alcohol right away," but if kept cool "it might go two or three weeks . . . and never get alcohol;" that this was why he did not ship it or sell it except on his own place; that in the beer he sold at the time in question there was probably .2 of one per cent of alcohol. He admitted that, if left standing, it would become intoxicating. The court held that the concoction was a "malt liquor," and was hence, in law, an intoxicating liquor because the legislature had defined it so. It is clear that it was brewed from malt and contained at least a trace of alcohol, as admitted by the defendant, and would soon develop sufficient alcohol to become intoxicating. It plainly fell within the standard definition of malt liquor as an "alcholic beverage brewed from malt." The facts showed a plain attempt to evade the statute by selling a potential beer.

The case of *Campbell v. Thomasville*, 6 Ga. App. 212, 64 S. E. 815, has no bearing upon the case before us. The court there defines "near beer" as:

"A term now of general currency in this state, and perhaps elsewhere, used to designate any and all of that class of malt liquors which contain so little alcohol that they will not produce intoxication, even though drunk to excess. It includes all malt liquors which are not within the purview of the general prohibition law."

The case merely held that, because its sale was not prohibited by the general statutes, it could not be prohibited by a city ordinance, but because it was an imitation and substitute for beer and liable to be used as a cover for the sale of real beer, it was within the police power of the city

to regulate its sale by ordinance. This is elementary. In fact it is admitted in the case before us that the sale of beverages containing no alcohol whatever may be by state statute absolutely prohibited in the exercise of the police power as an aid to the enforcement of the prohibition of alcoholic beverages. But our statute contains no such provision unless every liquid containing malt, whether fermented or not and whether containing alcohol or not, is a "malt liquor," which is the real question here involved.

In *People v. Kinney*, 124 Mich. 486, 83 N. W. 147, the court merely held that fermented cider was a "fermented liquor" and hence prohibited by the statute, whatever the degree of fermentation.

We shall not review in detail the other cases cited by respondent involving statutes prohibiting the sale of "cider" *eo nomine*. They merely hold that cider being in terms prohibited, the courts will not inquire whether the given cider is or is not "sweet" or "hard," fermented or unfermented, new or old, intoxicating or nonintoxicating. They throw no light on the question before us. *Commonwealth v. Dean*, 14 Gray (Mass.) 99; *State v. Frederickson*, 101 Me. 37, 63 Atl. 535, 115 Am. St. 295, 6 L. R. A. (N. S.) 186; *State v. Spaulding*, 61 Vt. 505, 17 Atl. 844.

We want it distinctly understood we do not hold that the statute does not prohibit the manufacture and sale of a malt beverage of such composition that of itself, under proper conditions, will generate alcohol. We hold just the contrary. Such a liquor would be potentially a malt liquor. In the language of the statutes, it would contain "intoxicating properties." Its manufacture or sale would be a palpable evasion of the statute. *State v. Walder, supra*. But the liquid here involved, it is admitted, "is entirely free from alcohol" and "does not in fact contain intoxicating properties." The admission clearly negatives the idea that it will of itself generate any alcohol whatever. It is not even claimed by the state that it will. We have, therefore, neither allegation nor proof

to bring the beverage here involved within any definition of malt liquor, actual or potential.

We further want it distinctly understood that we are not giving to the stuff called "Lifestaff" a certificate of character. *We are merely passing on the admitted facts now before us.* If, in any future case, it shall be either admitted or proved that "Lifestaff," or any other beverage by whatever name called, is in fact a malt liquor, either actual or potential, as the dictionaries, text books and courts have defined the term "malt liquor," then, in such a case, it must be held an "intoxicating liquor" as defined in the statute, and hence prohibited.

Neither do we hold that liquids absolutely harmless, wholly free from alcohol and wholly free from intoxicating properties of any kind, might not be directly prohibited, or might not be conclusively defined as intoxicating liquors and so prohibited, by a law so declaring in order to aid in the enforcement of the purpose of the prohibition law. The legislature, or the people in a legislative capacity, have the undoubted power to prohibit any liquid, however harmless in itself but which might be used as a cover for the sale of the harmful liquors, or to prohibit all imitations or substitutes for intoxicating liquors, however harmless separately considered. *But we have no such statute and this court cannot pass one. It cannot legislate.* Experience in the enforcement of the law as it is now written may eventually show such a need, but this court cannot supply it. The law as it now is contains no such provision, either in terms or by any possible implication, however liberally construed.

Again, we do not hold that the prohibition law as it now reads prohibits nothing but liquors or liquids capable of producing intoxication when taken to capacity. On the contrary, we hold that every malt liquor, though containing only a trace of alcohol, is in terms prohibited because it is a "malt liquor" under the common meaning of that term as defined

by every standard dictionary and every court which has attempted to define it.

We merely hold that a liquid containing malt, if unfermented and containing no alcohol whatever, is not a "malt liquor" as defined by any standard dictionary of our language, or as defined by any text book, or as defined by any court which has attempted to define the term, to which our attention has been directed or which, after many days of careful search, we have been able to find. In this we are not merely following precedent. We are simply giving to the term "malt liquor" the only meaning that it has in our language. We are not even selecting between a primary and secondary meaning. We are taking the only meaning which the words have. It is admitted that the liquid here involved does not come within that meaning. We are bound by the admitted facts.

The judgment is reversed.

MORRIS, C. J., PARKER, MOUNT, MAIN, HOLCOMB, and CHADWICK, JJ., concur.