[Crim. No. 226. Third Appellate District.—June 30, 1914.]

## THE PEOPLE, Appellant, v. H. L. STRICKLER, Respondent.

INTOXICATING LIQUORS—LOCAL OPTION LAW—PROHIBITION OF SALE OF NONINTOXICATING LIQUORS.—The legislature did not intend, by the enactment of the Wyllie Local Option Law (Stats. 1911, p. 599), to make it unlawful for one to engage in the business of selling nonintoxicating liquors; it was not the legislative intent to contraband the traffic in spirituous, vinous or malt liquors possessing no intoxicating quality. The legislature aimed the shafts of its denunciation solely against any liquors the use of which would produce intoxication, and, by specifying the quantity of alcohol which, when used in liquors, would bring them within the condemnation of the statute, it intended to and established a test applicable to all liquors the sale of which was designed by the statute to be prohibited in any territory to which the law might appropriately be made applicable.

ID.—PURPOSE OF LOCAL OPTION LAW—INTERPRETATION OF SECTION 21.— The purpose of such local option law is to suppress drunkenness and traffic in intoxicating liquors in those subdivisions where its

operation is invoked, and the rule of *ejusdem generis* is properly applied to section 21 of the act, which provides that "the term 'alcoholic liquors' as used in this act shall include spirituous, vinous and malt liquors, and any other liquor or mixture of liquors which contain one per cent, by volume, or more, of alcohol and which is not so mixed with other drugs as to prevent its use as a beverage."

ID.—RULE OF EJUSDEM GENERIS—MEANING AND SCOPE.—The rule of *ejusdem generis* simply means that "general and specific words which are capable of an analogous meaning, being associated together, take color from·each other, so that the general words are restricted to a sense analogous to the less general." Otherwise stated, "where a statute or other document enumerates several classes of persons or things, and immediately following and classed with such enumeration, the clause embraces 'other' persons or things, the word 'other' will generally be read as 'other such like,' so that persons or things therein comprised may be read as *ejusdem generis* with, and not of a quality superior to or different from, those specifically enumerated."

ID.—LIMITATIONS ON RULE—INTENTION OF LEGISLATURE—GIVING EFFECT TO EVERY PART OF STATUTE.—This rule of construction is by no means of universal application, and its use is to carry out, not to defeat, the legislative intent. It must yield to another salutary rule of construction, namely, that every part of a statute should, if possible, be upheld and given its appropriate force.

ID.—VIOLATION OF LOCAL OPTION LAW—INSUFFICIENCY OF INFORMATION TO CHARGE.—An information charging a violation of the Wyllie Local Option Law, which avers that the liquor therein alleged to have been kept for sale by the defendant contained less than the quantity of alcohol specified in section 21 of the act, namely, one per cent, fails to state an offense under the statute.

APPEAL from a judgment of the Superior Court of Colusa County. H. M. Albery, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Appellant.

Ben Berry, for Respondent.

HART, J.—The information in this case, purporting to accuse the defendant of a violation of the so-called Wyllie Local Option Law, reads as follows:

"The said H. L. Strickler on the 7th day of March nineteen hundred and thirteen at and in the County of Colusa, state

of California, and prior to the filing of this information did willfully and unlawfully keep and conduct in the town of Arbuckle and within the boundaries of first supervisor district of said Colusa County, state of California, a certain place where alcoholic liquors were by him then and there sold, served and distributed within the boundaries of said district; that said first supervisor district was then and there no-license territory; that said place was not then and there the home of said defendant; that said alcoholic liquors were not and none of them was then and there manufactured by defendant or by any other person on the said premises and place; that said alcoholic liquors were not then and there sold, served or distributed to or by a registered pharmacist, nor for medicinal purposes only upon a prescription by a duly licensed physician, nor for sacramental purposes; that said alcoholic liquors were then and there malt liquor containing less than one per cent by volume of alcohol, to wit: ninety-five hundredths of one per cent per volume of alcohol.''

The defendant demurred to said information on the ground that the same does not state a public offense under the law referred to. The court sustained the demurrer and dismissed the information, and this appeal is by the people from the judgment thereupon entered.

Section 13 of the Local Option Law declares it to be unlawful ''for any person, corporation, firm, association, or club, as principal, agent, employee, or otherwise, within the boundaries of any no-license territory, to sell, furnish, distribute or give away any alcoholic liquors, except as provided in section 16 hereof.''

Although not material to this inquiry, it may be stated that the exceptions provided in section 16 include the permission to serve intoxicating liquors in one's home to the members of his family or to his guests as an act of hospitality; the sale of such liquors by pharmacists for medicinal purposes; the use of wine in religious services, and the sale thereof by pharmacists for such use; the storage of such liquors, provided they are not distributed in no-license territory, and the keeping of such liquors on premises where manufactured, and the shipping of the same into territories where the liquor traffic is permitted by law to exist.

Section 21 of said act provides that ''the term 'alcoholic liquors' as used in this act shall include spirituous, vinous

and malt liquors, and any other liquor or mixture of liquors which contain one per cent by volume, or more, of alcohol and which is not so mixed with other drugs as to prevent its use as a beverage.''

The contention of the defendant is that, inasmuch as the information declares that the malt liquors, with the alleged illicit keeping and selling of which he is charged, contained a less quantity of alcohol than that specified in section 21 of said act as applied to ''any other liquor or mixture of liquors,'' etc., to wit: one per cent by volume, or more, no offense under said law is stated against him. The argument is that the general language of section 21, to wit: ''and any other liquor or mixture of liquors,'' etc., must be examined by the light of the maxim, *noscitur a sociis,* and that, as so viewed, it must be held that the provision as to the quantity of alcohol that must be present in such liquors to bring them within the interdictions of the statute includes those liquors *ejusdem generis,* specially enumerated by the language immediately preceding it.

The position of the attorney-general is that the special language of said section is not qualified or in any degree controlled by the general language thereof, but that, by the specific enumeration in said section of spirituous, vinous and malt liquors, the legislature intended such liquors to fall under its ban regardless of whether they do or do not in fact contain alcohol. In other words, it is the contention of the people that the intoxicating character of ''spirituous, vinous and malt liquors,'' as so enumerated in the statute, has been established by the legislature itself, and that it is not for the jury to revise the judgment of the legislature upon that matter and so determine whether such liquors are or are not in fact intoxicating. (*State* v. *Fredericks,* 101 Me. 37, [115 Am. St. Rep. 295, 8 Ann. Cas. 48, 6 L. R. A. (N. S.) 186, 63 Atl. 535].)

In the case of *People* v. *Mueller,* No. 231 (18 Cal. App. Dec., p. 220), this court was called upon to consider the propositions above stated, and we there expressed the opinion that, while in charging the offense of selling or keeping for sale spirituous, vinous or malt liquors, it was not necessary to allege that such liquors contained the amount of alcohol specified in section 21, a conviction could not be sustained under such an indictment unless such liquors were shown to

be intoxicating. This conclusion was reached mainly from the proposition, declared in the opinion in said case, that the terms "spirituous," "vinous" and "malt," as generically designating certain kinds of liquors, must have been used by the legislature in their popular sense—that is to say, that they were used to describe, generically, those alcoholic liquors commonly known as "spirituous," "vinous" and "malt," and which, it is known, will produce intoxication. The Mueller case was, after judgment here, ordered transferred to the supreme court for hearing, and it is now pending in that court.* Therefore, whether the intoxicating character of spirituous, vinous and malt liquors must be alleged in an indictment or information, where the charge is of selling or keeping them for sale and the accusatory pleading, following the language of the statute, designates them by their generic names, is a question which will doubtless be definitively determined by the supreme court in the case referred to and which, therefore, need not be considered here. We are still of the opinion, however, that the legislature did not intend to make it unlawful for one to engage in the business of selling non-intoxicating liquors. In other words, it is not reasonable to suppose that it was the legislative intent to contraband the traffic in spirituous, vinous or malt liquors possessing no intoxicating quality. To the contrary, it seems very clear, when we consider the ultimate object of the Local Option Law, that the legislature thus aimed the shafts of its denunciation solely against any liquors the use of which would produce intoxication, and that, by specifying the quantity of alcohol which, when used in liquors, would bring them within the condemnation of the statute, it intended to and did establish a test applicable to all liquors the sale of which was designed by the statute to be prohibited in any territory to which the law might appropriately be made applicable. This conclusion is arrived at by a view of section 21 of the act by the light of the rule of construction, *ejusdem generis,* above referred to. In its practical application, this rule simply means that "general and specific words which are capable of an analogous meaning, being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less

---

*Since this opinion was rendered, the case of *People* v. *Mueller* has been affirmed by the supreme court. The opinion of the supreme court is reported in 168 Cal. 526, [143 Pac. 750].

general." (3 Words and Phrases Judicially Defined, p. 2328.) Or, as this maxim was stated by Lord Tenterden (21 Am. & Eng. Ency. of Law, p. 1012) : "Where a statute or other document enumerates several classes of persons or things, and immediately following and classed with such enumeration the clause embraces 'other' persons or things, the word 'other' will generally be read as 'other such like,' so that persons or things therein comprised may be read as *ejusdem generis* with, and not of a quality superior to or different from, those specifically enumerated." This rule of construction is by no means of universal application, and its use is to carry out, not to defeat, the legislative intent. It must yield to another salutary rule of construction, viz.: that every part of a statute should, if possible, be upheld and given its appropriate force. (*Misch* v. *Russell,* 136 Ill. 22, [12 L. R. A. 125, 26 N. E. 528].) But, in this case, since it is plainly manifest, as stated, that the purpose of the Local Option Law is to suppress drunkenness and consequently the traffic in intoxicating liquors in those subdivisions where its operation is properly and legally invoked, the rule of *ejusdem generis* may be applied to the construction of section 21 without doing violence to or rendering inoperative any part of said section or of the law. Indeed, a construction of section 21 by the light of that doctrine will manifestly lead to the upholding of all the provisions of the law agreeably to the evident legislative design at the bottom of its enactment.

Thus, in a written opinion, the learned trial judge viewed the proposition submitted here and so concluded that the information by reason of its declaration that the liquor therein charged to have been kept for sale by the defendant contained less than the quantity of alcohol specified in section 21, failed to state an offense under the statute. Said opinion is appended to the brief of the defendant. We approve the opinion, both for its reasoning and its conclusion, and we, therefore, adopt the following part thereof as a part of this opinion :

"A great many cases from other jurisdictions are cited in support of the contention that the words spirituous, vinous and malt liquors have a fixed, definite meaning and are conclusive of the fact that such liquors contain alcohol and hence

are alcoholic and intoxicating within the contemplation of the statute.

"I find some conflict in the authorities upon this question. For example, the courts are in conflict as to whether beer is *per se* a malt or intoxicating liquor.

"It seems to be an open question in many jurisdictions as to whether courts will take judicial notice that pure alcohol is an intoxicating liquor within the meaning of the laws regulating and prohibiting sales of various classes of liquor. The weight of authority, however, seems to be that beer is malt and an intoxicating liquor. The cases cited by the district attorney seem to be fairly distinguishable from the case before us. Whether such cases may be considered as in point will depend somewhat upon the statutory provisions under consideration. Had the statute stopped with the words 'spirituous, vinous and malt liquors' without any general or qualifying words added thereto, then the authorities referred to would clearly be in point, and the sale of such liquors would be prohibited regardless of the alcoholic content of the liquor. But the following words just quoted, separated by only a comma, and this separation may be dispensed with, are the words 'and any other liquor, which contains one per cent by volume, or more, of alcohol.'

"Shall these concluding words be treated as an wholly independent clause of the statute, having no reference to the immediately preceding language of the same section, or shall they, as general words, be considered as relating back to and, in a sense, limiting and qualifying the particular words preceding them?

"These provisions and all other provisions of the statute must be taken together and be considered as a whole in order to arrive at the true intent and meaning of the law and lawmakers. This is a fundamental rule of statutory construction.

"Grammatical construction and punctuation may be ignored and even clauses of the statute may be transposed and rearranged in order to ascertain and give effect to the true intent and meaning of statutory enactments.

"The act is a local option law; its operation and enforcement are made to depend upon the vote of the people in a given territory. The first clause of the title of the act is, 'An act to provide for the regulation of the traffic in alco-

holic liquors by establishing local option.' The proposition petitioned for and to be submitted to the electors is, 'Shall the sale of alcoholic liquors in this (supervisorial) district be licensed?' If a majority vote on this proposition be in the negative, it is then made the duty of the board of supervisors to declare that the given territory is 'No-license territory,' and thereafter it shall be unlawful for any person in such territory (with certain exceptions, not material here) to sell alcoholic liquors. After all these (and other) provisions, is section 21 of the act, as above quoted, which defines the term alcoholic liquors, and provides they shall include spirituous, vinous and malt liquors and any other liquor containing one per cent, or more, of alcohol.

"From all these provisions, and from the means provided for making them effective, it seems clear that the act was intended to close saloons and to prevent drunkenness. While one purpose of the act, as disclosed in its title, is to regulate the traffic in alcoholic liquors, its main and chief purpose is to close saloons and prevent drunkenness. Alcohol is the intoxicating element or ingredient in spirituous liquor.

"If not intended to close saloons and to prevent drunkenness why submit the proposition to the electors of local territory under the proposition of license or no license? What the petitioners for the election desired and what the electors, in fair contemplation of the act, believed they were voting upon was 'Shall the sale of intoxicating (alcoholic) liquors which contain more than one per cent of alcohol be licensed?'

"It is not believed that the law, or law-makers or electors, intended to permit the sale of one kind of liquor which contained less than one per cent alcohol and to prohibit the sale of another and equally harmless liquor (malt) which contained no greater quantity of alcohol.

"No reason can be found why such discrimination should be made as between two equally harmless liquors, that is to say, harmless as to alcoholic content. To so hold would be to make the provisions of the statute inconsistent and inharmonious.

"Under the principles and authorities above stated a statute should receive such consideration, if possible, without doing violence to its terms, as will render its provisions consistent and in harmony with each other, and at the same time

to give effect to the real purpose and intent of the enactment.

"This is a criminal prosecution, and it is believed the law should receive a liberal construction, according to its true import and purpose and within the spirit of its provisions, rather than a strict technical construction. The spirit and not the letter of the law should control in such cases."

For the reasons herein stated, the judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 28, 1914.