STATE, RESPONDENT, *v.* CENTENNIAL BREWING CO., APPELLANT.

(No. 4,350.)

(Submitted February 10, 1919. Decided February 20, 1919.)

[178 Pac. 296.]

*Intoxicating Liquors—Prohibition Law—Statutes and Statutory Construction—Rules of Interpretation.*

Intoxicating Liquors — Prohibition Law — "Ardent Spirits" — "Spirituous Liquors."
    1. "Ardent spirits" and "spirituous liquors" express the same meaning and are used interchangeably in the prohibition law (Chaps. 143, 175, Laws 1917); hence absolute prohibition against the sale, *etc.*, of ardent spirits, likewise interdicts the sale, *etc.*, of spirituous liquors, without regard to alcoholic content.

Statutes—Amendments—Constitution.
    2. An Act which does not assume to be an amendment nor re-enact that portion of a prior statute claimed to be amended by it, does not, under section 25, Article V, of the Constitution, have the effect of an amendment.

Intoxicating Liquors—Statutory Construction—Amendments.
    3. *Held,* that the Enforcement Act (Chap. 143, Laws 1917), which provides the machinery for the enforcement of the prohibition law (Chap. 175, Laws 1917), does not amend the latter Act, either directly

or by implication, so as to make legal the sale of spirituous, vinous, fermented or malt liquors containing less than two per cent of alcohol measured by volume.

Same—Statutory Construction.
4. *Held,* that since spirituous, vinous, fermented or malt liquors are beverages, a construction of section 2 of Chapter 143, Laws of 1917, which would have the effect of declaring that their sale is not prohibited if they are incapable of being used as beverages, is not permissible.

Same—Statutory Construction—Rules of Grammar.
5. The rule of grammatical construction is an aid in the interpretation of statutes, which, however, must give way if the text of the statute indicates a legislative intention contrary to that which would follow from an application of the rules of grammar.

Same.
6. *Held,* that a construction of section 2 of Chapter 143, Laws of 1917, which would result in a definition of "intoxicating liquors," as any spirituous, vinous, fermented or malt liquors which "contains" as much as two per cent of alcohol and which "is" capable of being used as a beverage, offends against the ordinary rules of grammar and is not permissible.

Statutory Construction—Doctrine of "Last Antecedent."
7. Under the doctrine of the "last antecedent," resorted to in aid of the interpretation of statutes, a relative clause must be construed to relate to the nearest antecedent that will make sense, unless extension to others more remote is required to arrive at the true purpose of the legislature.

Intoxicating Liquors—Statutory Construction—Doctrine of "Last Antecedent."
.8. Held, under the doctrine of "last antecedent" above, that the clauses, "which contains as much as two *per centum* of alcohol," *etc.,* "and which is capable of being used as a beverage," found in section 2 of Chapter 143, Laws of 1917, defining "intoxicating liquors," qualify "liquor" and "liquid" and not the more remote terms "any spirituous, vinous, fermented or malt liquors."

Statutory Construction—Duty of Courts.
9. In construing statutes, courts cannot substitute judicial opinion of expediency for the will of the legislature.

Intoxicating Liquors—Definition—Power of Legislature.
10. If the legislature deems it necessary to the proper enforcement of the prohibition law to include within the definition of "intoxicating liquors" beverages which are in themselves harmless, they may be included.

Same—Prohibition Law—Statutory Construction.
11. *Held,* that whisky, brandy, gin, rum, wine, ale and spirituous, vinous, fermented or malt liquors, are by section 2, Chapter 143, Laws of 1917, declared intoxicating liquors within the meaning of the prohibition law, without reference to the amount of alcohol contained in them; held, further, that every other liquid or liquor—whether medicated, proprietary or patented—likewise falls within the same definition, if such liquor or liquid contains as much as two per cent of alcohol measured by volume and is capable of being used as a beverage.

Same—Prohibition Law—Nature of Act.
12. The prohibition law is one of suppression, not of supervision.

Same—Definition—Omission of "Beer"—Effect.
13. Since by the prohibition law (Chap. 175, Laws 1917), the sale of beer is prohibited absolutely, and the Enforcement Act (Id., Chap.

143), is not an amendment of the former, the fact that the definition of "intoxicating liquors" in section 2 of the latter statute does not include "beer" is without significance.

Same—Malt Liquor—Sale a Crime.

14. It is a criminal offense in this state to sell malt liquor which contains less than two per cent of alcohol measured by volume.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

THE CENTENNIAL BREWING COMPANY was convicted of a violation of the prohibition law, in selling malt liquor containing less than two per cent of alcohol, and appeals from the judgment of conviction. Affirmed.

*Mr. Fletcher Maddox,* for Appellant, submitted a brief, and argued the cause orally.

The argument of the state is that the qualifying phrase, "which contains as much as two *per centum* of alcohol measured by volume, *etc.*," relates only to the clause immediately preceding; that it is only "any liquor or liquid, whether medicated or not, *etc.*," containing less than two per cent of alcohol that does not fall within the definition. This is a misapplication of the unstable and doubtful doctrine of the "last antecedent." That doctrine which merely requires relative and qualifying words and clauses to be applied to the words or phrase immediately preceding, yields always to the plain intent and purpose of the law and particularly whenever a consideration of the entire Act clearly requires the qualifying clause to extend back to more remote phrases. To accomplish the operation of this doctrine in the present case, counsel for the state arbitrarily divides the liquors enumerated in the definition into three classes,—the first class, which is the specific, definite and known group in which the liquors are called by their right names; then a second class, "any spirituous, vinous, fermented or malt liquor"; then a third class, "any liquor or liquid of any kind or description." This tripartite classification is without logic or reason. It will be observed that there is nothing either in the punctuation or in the use of the conjunctions

to give color to the state's theory. It might be said that the qualifying phrase relates back to and covers all the subjects enumerated in the section. But it is not necessary to so decide, and we do not urge such a construction. Our argument is that the section being divided into specific and general groups or classes of liquors, the qualifying phrase covers the general group immediately preceding and all in that group. The conjunctive clauses are not marked by commas. The whole definition could properly be held to be controlled by the qualifying clause, but it is not necessary to so hold. The words are "gin, rum, wine, ale," and if the legislature had not intended to change the classification at this point from intoxicating liquors to a new class which might or might not be intoxicating according to their alcoholic content, then why was it necessary to use the words "and any" which follow the word "ale?" If the legislature had intended the "which contains" clause to apply only to "liquor or liquid of any kind," all doubt as to such intention could have been removed by omitting the words "and any" before "spirituous." There is nothing to indicate any legislative intent to limit the clause beginning "which contains" to liquor or liquid of any kind. On the other hand, there is everything to indicate that the "which contains" was intended to extend as well to fermented and malt liquor. The absence of beer from the group of specific liquors indicated the purpose to classify beer merely as a malt liquor to be controlled by the "which contains" clause. The maxim of *expressio unius est exclusio alterius,* may be applied in view of this omission. (*State* v. *St. Louis,* 174 Mo. 125, 61 L. R. A. 593, 72 S. W. 623.) We submit that the doctrine of the last antecedent is unavailing to the state to exclude a malt liquor from the benefit of the two per cent clause.

The legislature has directed that the law be so construed as to bring temperance to the state, and we therefore ask the court to construe section 2 that the declared purpose of the legislature may be accomplished. This may be done by giving all the words, phrases and clauses in section 2 that meaning which best

harmonizes with all other parts of the statute. (36 Cyc., p. 1131; *People* v. *Strickler,* 25 Cal. App. 60, 142 Pac. 1121.) In *Ex parte Hunnicutt,* 7 Okl. Cr. 213, 123 Pac. 179, it was held that in construing a statute, courts are not bound by punctuation or the grammatical construction of sentences. The object of construction is, if possible, to give effect and purpose to the true meaning of the statute. We therefore feel justified in asking this court, if deemed necessary, to so rearrange the words or clauses of section 2 as to make plain the apparent meaning of the legislature as gathered from the entire scope of the law. (*Ogden* v. *Saunders,* 12 Wheat. 213, 267, 6 L. Ed. 606, 624.) In the case of *Werckmeister* v. *Pierce etc. Mfg. Co.,* 63 Fed. 445, the United States circuit court held, that rearrangement of clauses or parts of sentences is justifiable under the most common circumstances, and is especially justifiable in order that the statute may not be read contrary to its plain purpose and general public policy.

We believe that the foregoing decisions of California and Oklahoma will be found conclusive upon the question presented by this appeal.

In a note to *Howard* v. *Acme Brewing Co.* (143 Ga. 1, 83 S. E. 1096), which is found in Ann. Cas. 1917A, 94, will be found collected a large number of decisions applying and construing prohibition laws. They turn upon statutes radically different from ours and the decisions are in many instances conflicting. Among the cases in the note to the *Acme Case* will be found the decisions relied upon by the state to support this conviction. They may be readily distinguished from the instant case.

In the compilation of the Montana prohibition laws issued by the attorney general's office, we observe the case of *State* v. *Fargo Bottling Works,* 19 N. D. 396, 26 L. R. A. (n. s.) 872, 124 N. W. 387. The North Dakota definition of intoxicating liquors, after a specific enumeration of many liquors, said: "Or any mixtures of such, or any kind of beverage whatsoever, which, retaining the alcoholic principle or other intoxicating

qualities as a distinctive force, may be used as a beverage and become a substitute for the ordinary intoxicating drinks,'' *etc.* The defendant was convicted of selling Purity Malt, containing 1.75 per cent of alcohol. Under the North Dakota law, we concede that the conviction was proper.

*Mr. Geo. H. Stanton,* of Counsel for Appellant, submitted a brief.

Reading the Referendum and the Enforcement Acts together, we find a seeming repugnance, which, if real, must yield to the definition of intoxicating liquors. We find in the Referendum Act the generic term ''beer'' used as one of the prohibited liquors, while in the phrase defining intoxicating liquors, the word ''beer'' does not appear, but, instead, the words ''fermented or malt liquors'' are employed. The legislative purpose and intent, of course, was to define what is meant by the general term ''beer,'' as used in the Referendum Act. ''Beer,'' in the usual acceptation of such term, is a fermented or malt liquor, but fermented or malt liquors are not necessarily ''beer.'' The right of the legislature to define the general terms employed in the Referendum Act is beyond reasonable dispute. In the absence of such definition, that which would constitute beer would be a matter of proof by production of evidence or by analysis. To obviate the necessity of such proof, the legislature wisely defined the general term ''beer'' by enacting that fermented or malt liquors are intoxicating liquors if the percentage of alcohol therein is as much as two per cent—otherwise not. ''The word 'beer' is a generic term which is applied indiscriminately to malt beer, as well as to beer which is made from various extracts and from the roots and other parts of certain plants and the bark of trees; thus, it cannot be said, without specific designation of the kind of beer referred to, that it is an intoxicating liquor.'' (*State* v. *Sioux Falls Brewing Co.,* 5 S. D. 39, 26 L. R. A. 138, 58 N. W. 1.) Ardent spirits are well known to be whisky, brandy, gin and rum, as indicated in the definition of intoxicating liquors. It is too clear to admit

of argument that no fermented or malt liquor could be any compound of ardent spirits.

*Mr. S. C. Ford,* Attorney General, *Mr. Frank Woody,* Assistant Attorney General, and *Mr. Joseph R. Jackson, Mr. N. A. Rotering* and *Mr. Frank L. Riley,* for Respondent, submitted a brief; *Mr. Woody* and *Mr. Rotering* argued the cause orally.

The following cases show the construction given statutes containing language, not identical, but similar to the language contained in section 2 of Chapter 39, and intended for the same purpose, for which we contend: *Sawyer* v. *Botti,* 147 Iowa, 453, 27 L. R. A. (n. s.) 1007, 124 N. W. 787; *Marks* v. *State,* 159 Ala. 71, 133 Am. St. Rep. 20, 48 South. 864; *State* v. *Hemrich,* 93 Wash. 439, L. R. A. 1917B, 962, 161 Pac. 79; *Brown* v. *State,* 17 Ariz. 314, 152 Pac. 578; *State* v. *Townley,* 18 N. J. L. 311, 318; *State* v. *Terry,* 72 N. J. L. 375, 61 Atl. 148, 73 N. J. L. 554, 64 Atl. 113; *Commonwealth* v. *Snow,* 133 Mass. 575; *State* v. *Guinness,* 16 R. I. 401, 16 Atl. 910; *State* v. *McKenna,* 16 R. I. 398, 17 Atl. 51; *United States* v. *Cohn,* 2 Ind. Ter. 474, 52 S. W. 38.

Counsel for appellant attempt to lay considerable stress on the fact that the word "beer" is omitted from section 2 of Chapter 143, defining intoxicating liquors, but it was manifestly unnecessary to mention the word "beer" in such section, as it is not only specifically named in the prohibitory law (Chap. 39, Sess. Laws 1915), but it is universally known to be a fermented and malt liquor, of which fact the courts take judicial notice (1 Woollen & Thornton on Intoxicating Liquors, secs. 34, 76); and therefore, by that name, or under the quality and kind by whatever name called, is included fairly and squarely within our prohibition laws. And there can, therefore, be neither "rhyme nor reason" in the contention of counsel that the omission of the word "beer" was made with the express purpose of including it within the class of beverages containing not more than two per centum of alcohol, to-wit, within the patent medicine class.

When the word "beer," without any restriction or qualification, is used in a prohibitory law, it always means and denotes a fermented and malt liquor.   (Black on Intoxicating Liquors, sec. 17; 1 Woollen & Thornton on Intoxicating Liquors, secs. 5, 34, 76; 1 Words and Phrases, 1st ed., p. 731 *et seq.;* 1 Words and Phrases, 2d ed., p. 416 *et seq.*)   Chapter 143, Sess. Laws 1917, is not a prohibitory law, but merely an enforcement law, as we have said, providing the machinery whereby the prohibitory law may be properly enforced.   Yet, according to the contention of appellant, the provisions of the enforcement law would, in effect, restrict, modify and qualify the provisions of the prohibitory law, by permitting the sale of beer containing less than two *per centum* of alcohol measured by volume, although there can be no doubt but what the legislature did not intend in any way, by any provision in the enforcement law, to restrict, qualify or modify any provision of the prohibitory law.

Counsel cannot seriously contend that it is beyond the power of the legislature to make the classification that has been made in the prohibition law and as contended for by the state in the instant case.   Admitting that the legislature has such power, its will, in the light of prohibition history, is correctly interpreted by the state.   So that there may be no doubt as to the right of the state to so classify beverages; we quote from the notes to the case of *Howard* v. *Acme Brewing Co.,* reported in Ann. Cas. 1917A, at page 94: "Legislatures have the undoubted right to regulate the manufacture and sale of intoxicating beverages, and in the exercise of this right, to declare what liquors are prohibited, what are intoxicating, and what are not—to designate them by general or special terms, and so to frame and word the law as to prevent the evasion of its provisions.   So, when a statute enacted for the purpose of regulating intoxicating liquors described them by such a general term as 'alcoholic,' 'spirituous,' 'malt,' or 'vinous,' the courts frequently hold that a nonintoxicating liquor, which falls within one of the classes enumerated, is included in the inhibition of the statute."   (See *Feibelman* v. *State,* 130 Ala. 122, 30 South. 384; *Dinkins* v. *State,* 149 Ala.

49, 43 South. 114; *Lambie* v. *State,* 151 Ala. 86, 44 South. 51; *Bradshaw* v. *State,* 76 Ark. 562, 89 S. W. 1051; *In re Lockman,* 18 Idaho, 465, 46 L. R. A. (n. s.) 759, 110 Pac. 253; *Sawyer* v. *Botti,* 147 Iowa, 453, 27 L. R. A. (n. s.) 1007, 124 N. W. 787; *State* v. *Stickle,* 151 Iowa, 303, 131 N. W. 5; *State* v. *O'Connell* 99 Me. 61, 58 Atl. 59; *State* v. *Frederickson,* 101 Me. 37, 115 Am. St. Rep. 295, 8 Ann. Cas. 48, 6 L. R. A. (n. s.) 186, 63 Atl. 535; *Commonwealth* v. *Dean,* 14 Gray (Mass.), 99; *Commonwealth* v. *Timothy,* 8 Gray (Mass.), 480; *State* v. *Gill,* 89 Minn. 502, 95 N. W. 449; *Fuller* v. *Jackson,* 97 Miss. 237, 30 L. R. A. (n. s.) 1078, 52 South. 873; *Purity Extract etc. Co.* v. *Lynch,* 100 Miss. 650, 56 South. 316; *Luther* v. *State,* 83 Neb. 455, 20 L. R. A. (n. s.) 1146, 120 N. W. 125; v. *State,* 83 Neb. 455, 20 L. R. A. (n. s.) 1146, 120 N. W. 125; *State* v. *Lebrecque* (N. H.), 97 Atl. 747; *State* v. *York, Bottling Works Co.,* 19 N. D. 396, 26 L. R. A. (n. s.) 872, 124 N. W. 387; *State* v. *Kauffman,* 68 Ohio St. 635, 67 N. E. 1062; *La Follette* v. *Murray,* 81 Ohio St. 474, 91 N. E. 294; *State* v. *Walder,* 83 Ohio St. 68, 93 N. E. 531; *Hatfield* v. *Commonwealth,* 120 Pa. St. 395, 14 Atl. 151; *State* v. *Spaulding,* 61 Vt. 509, 17 Atl. 844; *Commonwealth* v. *Goodwin,* 109 Va. 828, 64 S. E. 54; *Commonwealth* v. *Henry,* 110 Va. 879, 26 L. R. A. (n. s.) 883, 65 S. E. 570.)

In legislation by Congress and by the legislatures of practically all of the states, whether such legislation be prohibitory, local option, or for the purpose of license and regulation, "malt liquor," regardless of whether or not it is intoxicating and regardless of its alcoholic content, has always been classed as an intoxicating liquor and placed in the same class with spirituous and vinous liquors, without qualification or restriction of any kind.    (Citing Statutes, federal and state.)

While the general rule is that a penal statute must be strictly construed, such rule does not here apply, since section 1 of the Act in question imposes its own rule of construction, and the court is bound thereby, and should construe the provisions of section 2 liberally and in such a manner that the prohibitory

and the enforcement laws can be made to accomplish their full purpose. (*State* v. *Hemrich,* 93 Wash. 439, L. R. A. 1917B, 962, 161 Pac. 79; 36 Cyc. 1105 *et seq.*)

If appellant's contention is sound, it makes no difference whether the malt liquors sold were or were not intoxicating, as they contained less than two *per centum* of alcohol; while, on the other hand, if the state's contention is sound, the liquors were prohibited regardless of the amount of alcohol they contained and regardless of whether they were or were not intoxicating. The question whether the malt liquors were or were not intoxicating does not enter into the question in any way. If malt liquors are prohibited regardless of the quantity of alcohol contained therein, the fact that they are not intoxicating does lift the ban, while if they are only prohibited when containing as much as two *per centum* of alcohol, they are not under the ban when containing less than two per cent alcohol, even though they are in fact intoxicating. (*Luther* v. *State,* 83 Neb. 455, 20 L. R. A. (n. s.) 1146, 120 N. W. 125; *Hatfield* v. *Commonwealth,* 120 Pa. 395, 14 Atl. 151; *Reyfelt* v. *State,* 73 Miss. 415, 18 South. 925; *State* v. *Barron,* 37 Vt. 57; note to *State* v. *York,* 13 Ann. Cas. 116.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This appeal by the Centennial Brewing Company from a judgment of conviction of a violation of the prohibition law presents for decision the question: Is it a criminal offense in this state to sell malt liquor which contains less than two *per centum* of alcohol measured by volume?

At the general election held in November, 1916, the people, by direct vote, adopted a statute called familiarly the prohibition law. By its terms, any person who manufactures, sells, exchanges, barters, gives or disposes of any ardent spirits or any compound thereof capable of use as a beverage, or any ale, beer, wine or intoxicating liquor of any kind, is guilty of a mis-

demeanor. The Act did not become effective until December 31, 1918. (Chap. 39, Laws 1915; Chap. 175, Laws 1917.)

By an Act approved March 5, 1917 (Chap. 143, Laws 1917), and known as the Enforcement Act, elaborate machinery was provided for the enforcement of the prohibition law, and as one means to that end, section 2 defines intoxicating liquors as follows:

"Sec. 2. The phrase 'intoxicating liquors' shall be held and construed to include whisky, brandy, gin, rum, wine, ale, and any spirituous, vinous, fermented or malt liquors and liquor or liquid of any kind or description, whether medicated or not, and whether proprietory (proprietary), patented or not, which contains as much as two *per centum of* alcohol measured by volume, and which is capable of being used as a beverage."

It is the contention of appellant that the concluding clauses, "which contains as much as two *per centum* of alcohol measured by volume, and which is capable of being used as a beverage," modify the terms spirituous, vinous, fermented or malt liquors and liquor or liquid of any kind, and therefore it is not unlawful to sell spirituous, vinous, fermented or malt liquors which do not contain as much as two *per centum* of alcohol measured by volume, or which are not capable of use as beverages. This contention cannot be upheld.

1. It assumes necessarily that the Enforcement Act amends [1] the prohibition law. To illustrate: By the prohibition law the sale of ardent spirits is prohibited altogether without reference to alcoholic contents, whereas, if appellant's contention be upheld, the sale of *spirituous liquors* containing less than two per cent of alcohol is not prohibited.

"Ardent spirits" and "spirituous liquors" are terms of general use and each has a well-defined, well-understood meaning. In Webster's International Dictionary the term "ardent" is defined as: "Hot or burning; causing a sensation of burning; fiery, as ardent spirits, that is distilled liquors." Century Dictionary—Ardent Spirits: "Distilled alcoholic liquors, as brandy, whisky, gin, rum." Standard Dictionary—Ardent Spirits:

"Alcoholic distilled liquors." Worcester's Dictionary—Ardent Spirits: "A term applied to liquors obtained by distillation such as rum, whisky, brandy and gin." Black's Law Dictionary—Ardent Spirits: "Spirituous or distilled liquors."

"Spirituous liquor means distilled liquor." (1 Woollen & Thornton on the Law of Intoxicating Liquors, sec. 7.) Spirituous—"Containing much alcohol; distilled, whether pure or compounded, as distinguished from fermented; ardent; applied to a liquor for drink." (Century Dictionary.) Spirituous Liquors—"Any intoxicating liquor produced by distillation or by rectifying, compounding or otherwise treating or using distilled alcoholic fluids in distinction from fermented or brewed intoxicating beverages." (Standard Dictionary.) Spirituous Liquors—"These are inflammable liquids produced by distillation and forming an article of commerce." (Black's Law Dictionary; Cyclopedic Law Dictionary.) Spirituous Liquor—"Distilled liquor." (Anderson's Law Dictionary.) The term "spirituous liquor" means distilled liquor. (Black on Intoxicating Liquors, sec. 3.) "Spirituous liquor is that which is in whole or in part composed of alcohol extracted by distillation; whisky, brandy and rum being examples." (15 R. C. L. 249.)

In *Sarlls* v. *United States*, 152 U. S. 570, 38 L. Ed. 556, 14 Sup. Ct. Rep. 720, the supreme court of the United States approved the definitions as given by Webster, Worcester and Century Dictionaries. In *United States* v. *Ellis*, 51 Fed. 808, the court, in speaking of these terms used in a prohibition statute, said: "Ardent and spirituous are used indiscriminately as having the same meaning."

There cannot be any question that ardent spirits and spirituous liquors are terms used to express the same meaning, and since by the prohibition law the sale of ardent spirits is prohibited absolutely, the sale of all spirituous liquors is likewise prohibited, without reference to the alcoholic contents, unless the Enforcement Act has amended the prohibition law. But such was not its purpose and is not its effect.

It does not assume to be an amendment and it does not re-enact any part of the prohibition law, and for this reason it cannot have the effect of an amendment. Section 25, Article V, of the state Constitution, provides: "No law shall be revised or amended, or the provisions thereof extended by reference to its title only, but so much thereof as is revised, amended or extended shall be re-enacted and published at length." Neither can the doctrine of amendment by implication apply.

2. Appellant's contention leads to a contradiction of terms **[4]** employed in section 2 of the Enforcement Act. Reduced to its simplest form, the contention amounts to this:

The sale of spirituous, vinous, fermented or malt liquor, not capable of being used as a beverage, is not prohibited. The word "beverage" means a drink or liquor for drinking. (Century Dictionary.) Every one of the terms—spirituous liquor, vinous liquor, fermented or malt liquor—has a well-understood meaning. Every one of those liquors is not merely capable of being used as a beverage, but it is in fact a beverage, and it is a contradiction of terms to speak of spirituous, vinous, fermented or malt liquor, not capable of being used as a beverage.

3. The grammatical construction of the section does not admit **[5, 6]** of the application of appellant's theory. Under the construction contended for, the sentence would read: The phrase "intoxicating liquors" shall be held and construed to include any spirituous, vinous, fermented or malt liquors which *contains* as much as two *per centum* of alcohol and which *is* capable of being used as a beverage. In the connection in which they are employed, the words "any," "spirituous," "vinous," "fermented" and "malt" are adjectives, all modifying the noun "liquors," which is plural in number, whereas each of the verbs "contains" and "is" is singular.

The rule of grammatical construction is merely an aid in interpretation, and if the text of the statute indicates a legislative intention contrary to that which would follow from the application of the rules of grammar, then the rule of grammati-

cal construction must give way, but in the absence of a clear intention disclosed by the text, then, as said by this court in *Jay* v. *School District,* 24 Mont. 219, 61 Pac. 250, "we must elicit the purpose and intent of it [the statute] from the terms and expressions employed, if this is possible, calling to our aid the ordinary rules of grammar."

4. The contention of appellant does violence to another rule [7, 8] of statutory construction. The last antecedent before either of the modifying clauses is *liquor* or *liquid.* It is a rule of law as old as the law itself, that a relative clause shall be construed to relate to the nearest antecedent that will make sense (*Traverse City* v. *Blair Township,* 190 Mich. 313, Ann. Cas. 1918E, 81, 157 N. W. 81; Endlich on Interpretation of Statutes, sec. 414), or, as more aptly stated: "By what is known as the doctrine of the 'last antecedent,' relative and qualifying words, phrases and clauses are to be applied to the words or phrase immediately preceding and are not to be construed as extending to or including others more remote, unless such extension is clearly required by a consideration of the entire Act." (36 Cyc. 1123.) As said of the last preceding rule, this one is merely an aid in interpretation, and, in case of conflict, must give way to the more general rule that the intention of the legislature is to be pursued, if possible, but unless the statute requires a different construction, the rule of the last antecedent is applicable as fairly indicating the true purpose and intent of the lawmakers.

Appellant argues plausibly that no reason can be advanced why a malt liquor containing only one-half of one per cent of alcohol should be under the ban, while a patented medicine containing 1.95 per cent of alcohol and capable of being used as a beverage is suffered to be sold. We confess our inability [9, 10] to justify the apparent discrimination; but this furnishes no reason for a construction of the language contrary to its manifest import. We cannot substitute judicial opinion of expediency for the will of the legislature. It is too well settled now to be open to argument that it is within the province

of the legislature to define the term "intoxicating liquors," and, if it is deemed necessary, in order to avoid subterfuges and frauds which fetter the effective enforcement of the law, to include within the definition beverages which are in themselves innocuous, they may be included. (1 Woollen & Thornton on Intoxicating Liquors, sec. 114; *Purity Extract & Tonic Co.* v. *Lynch,* 226 U. S. 192, 57 L. Ed. 184, 33 Sup. Ct. Rep. 44.) In that case the court said: "It is well established that, when a state exerting its recognized authority undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction separately considered is innocuous, it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government."

In our judgment, the meaning of section 2 above is per-
[11] fectly clear. Whisky, brandy, gin, rum, wine, ale, spirituous liquors, vinous liquors, fermented or malt liquors, as those terms are generally understood, are all declared to be. intoxicating liquors within the meaning of the prohibition law, and that, too, without reference to the amount of alcohol contained in them. Every other liquor or liquid of whatever kind or description, whether medicated, proprietary or patented, is likewise within the same definition if it contains as much as two *per centum* of alcohol measured by volume, and is capable of being used as a beverage. This construction harmonizes the two statutes and treats the Enforcement Act as a supplement to, and not as an amendment of, the prohibition law. It makes a grammatically correct sentence of the section and avoids any contradiction in terms. It applies the relative clauses to the last antecedent and, above all other considerations, it gives force and effect to the manifest purpose of the lawmakers.

The Act adopted by the people in November, 1916, is not in any sense a statute regulating the liquor traffic. Its avowed

purpose is to outlaw a business theretofore regulated by license legislation. The title of the Act indicates its purpose. "An Act prohibiting the introduction into, the manufacture of, and the giving, exchanging, bartering, selling, or disposing of ardent spirits, ale, beer, wine or intoxicating liquors within the state of Montana," *etc.*

The manufacture and sale of denatured alcohol, alcohol for scientific or manufacturing purposes and wine intended for the sacrament are specifically excepted from the operation of the law, but, with these exceptions, the sale of everything which falls within the fair import of the terms employed is prohibited [12] absolutely. The statute was clearly designed as one of suppression and not of supervision. As indicated beyond cavil, the purpose of section 2 above is to aid in the enforcement of the prohibition law by making certain that which was deemed to be uncertain—by giving to the term "intoxicating liquors" a definition so comprehensive as effectually to forestall every attempt at evasion by any subterfuge whatever.

Long before either of these statutes was enacted, legislative and judicial history had disclosed that the ingenuity of man can devise almost limitless means for evading a prohibition law; that any beverage by name may be counterfeited, and that the use of such general terms as "intoxicating liquors" only leads to confusion and a practical annulment of the law itself, and with this history and experience before them, the members of the legislative assembly in 1917 undertook the enactment of Chapter 143 to render the prohibition law effective and its enforcement a matter of reasonable certainty.

No importance whatever can be attached to the fact that in [13] defining intoxicating liquors in section 2 of the Enforcement Act, the term "beer" by name is omitted. As heretofore observed, this Act is not in any sense an amendment of the prohibition law, and by that law the sale of beer is prohibited absolutely. It could have been only out of abundance of caution that any liquor was designated by name. The concluding clauses of that section were not designed to exempt from the

operation of the prohibition law any liquor properly so called. They were designated to mark the deadline beyond which bitters, drugs and other patented and proprietary medicines and nostrums, under whatever name or description, might not become the vehicle for a continuation of the traffic in alcoholic beverages. The legislature doubtless concluded that the alcoholic contents of these preparations—less than two per cent—would be so far neutralized by the other ingredients as to render them practically harmless as beverages.

No useful purpose could be served by a review of the all but limitless number of adjudicated cases construing prohibition laws. The statutes of the several states differ so materially in the language employed that the construction of one is of little aid in the interpretation of another. Furthermore, there is a conflict among the authorities construing somewhat similar statutes.

In *People* v. *Strickler*, 25 Cal. App. 60, 142 Pac. 1121, the court was called upon to construe a section of the local option law which reads as follows: "The term 'alcoholic liquors' as used in this Act, shall include spirituous, vinous and malt liquors, and any other liquor or mixture of liquors which contain one per cent by volume, or more, of alcohol, and which is not so mixed with other drugs as to prevent its use as a beverage." The rule of the last antecedent was disregarded, and it was held that the clause "which contain one per cent per volume, or more, of alcohol," modifies the terms "spirituous, vinous and malt liquors" as well as the terms "liquor" or "mixture of liquors."

In *State* v. *Hemrich*, 93 Wash. 439, L. R. A. 1917B, 962, 161 Pac. 79, the Washington supreme court construed a section of the prohibition law which provides: "The phrase 'intoxicating liquor,' wherever used in this Act, shall be held and construed to include whisky, brandy, gin, rum, wine, ale, beer and any spirituous, vinous, fermented or malt liquor, and every other liquor or liquid containing intoxicating properties." The doctrine of the last antecedent was applied, and it was held that

the phrase "containing intoxicating properties" modifies the terms "other liquor or liquid," and does not modify any of the other preceding terms.

The strained construction given to the statute considered in *Ex parte Hunnicutt,* 7 Okl. Cr. 213, 123 Pac. 179, may have been justified under the circumstances, but the reasoning by which the conclusion was reached does not commend it to our judgment. None of the decisions is particularly persuasive here.

Under the construction of these statutes which we have [14] adopted, it is a criminal offense in this state to sell malt liquor which contains less than two *per centum* of alcohol.

In passing, we may observe that section 2 of the Enforcement Act, in so far as it includes malt liquors within the definition of intoxicating liquors, is to be construed according to the approved usage of the language (Rev. Codes, sec. 15), that is to say, "malt liquor" having acquired a well-defined meaning, will be held to have been used by the legislature to indicate an alcoholic beverage,—the percentage of alcohol being immaterial. (*State* v. *Hemrich,* above.)

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE COOPER concur.