212 P.2d 629]

Appellate Department, Superior Court, San Diego

[Crim. A. No. 154944. Nov. 25, 1949.]

THE PEOPLE, Respondent, v. JAMES K. CHRISTIE,
Appellant.

Stanford & McDonough for Appellant.

James Don Keller, District Attorney, and Ned A. Kimball, Deputy District Attorney, for Respondent.

BURCH, J.—Defendant was convicted in a trial by jury of violating section 15 of the Chiropractic Act [Stats. 1923, p. xx, 2 Deering's Gen. Laws, Act 4811], an initiative measure adopted by the people in November, 1922. Defendant is a licensee under the act and held himself out to the public by business cards and a sign on his office window as a "chiropractic physician." The jury was instructed, in effect, that if they found the defendant used the word "physician" they must find him guilty under the act. On appeal, defendant makes no contention that the section is unconstitutional. It is his position that his use of the term "chiropractic physician" is not deceptive of his status as a licensed chiropractor, and that on a proper construction of the section he was entitled to go to the jury on the question whether by using the word "physician" he indicated to the public that he held a license other than to practice chiropractic.

The section of the initiative measure in question reads as follows:

"Any person who shall practice or attempt to practice chiropractic, or any person who shall buy, sell or fraudulently obtain a license to practice chiropractic, whether recorded or not, or who shall use the title 'chiropractor' or 'D.C.' or any word or title to induce, or tending to induce belief that he is engaged in the practice of chiropractic, without first complying with the provisions of this act; or any licensee under this act who uses the word 'doctor' or the prefix 'Dr.' without the word 'chiropractor', or 'D.C.' immediately following his name, or the use of the letters 'M.D.' or the words 'doctor of medicine,' or the term 'surgeon,' or the term 'physician,' or the word 'osteopath,' or the letters 'D.O.' or any other

letters, prefixes or suffixes, the use of which would indicate that he or she was practicing a profession for which he held no license from the state of California, or any person who shall violate any of the provisions of this act, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than fifty dollars and not more than two hundred dollars, or by imprisonment in the county jail for not less than thirty days nor more than ninety days, or both.''

The treatment of human disorders by those who profess to be skilled therein has been the subject of regulation by the lawgivers from an early date in the history of California (20 Cal.Jur. 1054). A prominent feature of this regulation is the requirement of a license. The license distinguishes the particular branch of the healing art in which the practitioner professes to be skilled, and thus reserves to the patient the choice of treatment.

All parties are in accord with the text writers (Radin, Statutory Interpretation, 43 Harv.L.Rev. 863; Radin, *A Short Way With Statutes,* 56 Harv.L.Rev. 388; Pound, *The Common Law and Legislation,* 21 Harv.L.Rev. 383; Gray, *The Nature and Sources of The Law* (2d ed.), ch. VIII, Stats.), and the decisions (*Kaiser* v. *Hopkins,* 6 Cal.2d 537 [58 P.2d 1278]; *Helping Hand Home for Children* v. *County of San Diego,* 26 Cal.App.2d 452 [78 P.2d 778]; *People* v. *Strickler,* 25 Cal.App. 60 [142 P. 1121]; *United States* v. *Gilliland,* 312 U.S. 86, 93 [61 S.Ct. 518, 85 L.Ed. 598]; *Texas* v. *United States,* 292 U.S. 522, 534 [54 S.Ct. 819, 78 L.Ed. 1402]. See, also, *Shoults* v. *Alderson,* 55 Cal.App. 527 [203 P. 809]) that the principal purpose of judicial construction of statutes is to arrive at the intent of the lawgiver. Professor Gray lays down a rule of construction as follows:

''Interpretation is of two kinds, grammatical and logical . . . Grammatical interpretation is the application to a statute of the laws of speech; logical interpretation calls for the comparison of the statute with other statutes and with the whole system of Law, and for the consideration of the time and circumstances in which the statute was passed.'' (*The Nature and Sources of The Law, supra,* p. 176.)

In this case, the legislative history affords an accurate and compelling guide to the meaning of the measure which concededly is somewhat hidden if considered only in its grammatical or literal sense. Successive drafts of the Medical Practice Act from its enactment in 1876 (Stats. 1875-6, p.

792) have emphasized the distinction among practitioners of the healing arts between those who employ medicines and those who do not. This dichotomy is implicit in the chapter on medicine in the present Business and Professions Code (Stats. 1937, p. 1377). Section 2135 of that code empowers the medical board to issue four forms of certificates, which are designated (a) physician's and surgeon's certificate; (b) drugless practitioner's certificate; (c) certificate to practice chiropody; and (d) certificate to practice midwifery.

In 1922, there was prepared and submitted to the voters the present Chiropractic Act (Stats. 1923, p. xx, initiative measure, approved November 7, 1922, effective December 21, 1922), which was adopted in the November election of that year. At the same time, the present Osteopathic Act (Stats. 1923, p. xxv; 2 Deering's Gen. Laws, Act 5727, initiative measure, approved November 7, 1922, effective December 21, 1922) was adopted by popular vote. At the time these initiative measures were adopted, the Medical Practice Act of 1913 was in effect (Stats. 1913, p. 722). By that act only two certificates were authorized to be issued: (1) a physician's and surgeon's certificate authorizing the use of drugs and medicines, and (2) a drugless practitioner's certificate.

Whoever framed the Chiropractic Act for submission to the people for its adoption or rejection by a "yes" or "no" vote obviously had in mind the existing provisions of the Medical Practice Act which made ineligible for a physician's and surgeon's certificate those practitioners of the healing art licensed to practice without drugs. What Professor Gray has referred to in the quotation above as the logical method of interpretation was the approach of the Supreme Court in *In re Rust,* 181 Cal. 73 [183 P. 548]. In that case, by reason of part of the history we have related above, the Supreme Court denied to one licensed under the osteopathic law then existing, the benefits and prerogatives of the title "physician" on the theory that a physician practiced with drugs and an osteopath was a drugless practitioner. By the same token and by the same process of interpretation, we come to the conclusion that a chiropractor under the existing chiropractic law, and particularly section 15 of the chiropractic law, is specifically denied the right to employ the word "physician," since he professes to heal without drugs or medicines.

In the light of the historical background of this and similiar legislation, we conclude that section 15 of the act denies to a licensed chiropractor the right to use the word "physician."

We are not impressed with the argument that defendant has saved himself from violating the act by adding the word "chiropractic" to the word "physician." There can be no use of the word "physician" by a practitioner of the healing arts except to color and imply a license to practice with drugs. This is the view suggested by the adoption of the act in its present form if we have properly construed its meaning. (See *In re Rust,* 181 Cal. 73 [183 P. 548], and *Shoults* v. *Alderson,* 55 Cal.App. 527 [203 P. 809].)

Defendant cites the case of *People* v. *Strickler,* 25 Cal.App. 60 [142 P. 1121], and argues that the rule of *ejusdem generis,* there defined, supports the contention that the express requirement of the act in question, that the other words forbidden must be deceptive—a result which can only be determined as a question of fact—leaves open the question of whether "physician" is a deceptive word. The rule of *ejusdem generis* ". . . simply means that 'general and specific words which are capable of an analogous meaning, being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less general.'" (*People* v. *Strickler, supra,* p. 61.)

In the act before us we have the specific word "physician." The words of a general nature are not specified but are confined to those which may carry the color of deception which we have shown by the legislative history attaches to the word "physician" when used by one licensed to practice without drugs. Here the generic words must have the special significance of the word "physician" to come within the bane of the statute. The distinction made by the act between the two types of practitioners, those who use drugs, and those who do not, has been held to be a reasonable classification (*In re Rust, supra*). Therefore, in view of the meaning which attaches to the statute in consideration of its express terms, and the aim and nature of the class of legislation to which the act belongs, we would construe the statute as did the court below and find no error in the instruction given the jury at the trial.

The judgment is affirmed.

Turrentine, P. J., and Glen, J., concurred.